NORFOLK SOUTHERN RAILROAD COMPANY v. CHARLES REID,
Sheriff and Tax Collector of Pasquotank County.

(Filed 27 February, 1924.)

1. **Taxation—Counties—Necessary Expenses—Constitutional Law.**

   The building of bridges on the public roads, and county homes, and their maintenance, are necessary expenses of the county, under the provisions of Article VII, section 7, State Constitution.

2. **Same—Statutes—Special Approval.**

   Article V, section 6, of the State Constitution, as amended, authorizes the Legislature to give special approval of taxation by a county for necessary expenditures by either a special or general statute.

3. **Same—Supplementing General Funds of the County.**

   An act that attempts to authorize a county to supplement to any extent its fund for general county expenses by special tax beyond the limitation by Article V, section 6, of the Constitution, is to that extent unconstitutional and void; but where the valid portion of the act is distinctly severable from the invalid part, and may alone be enforced by the methods prescribed, without being affected by the invalid part, the entire statute will not be declared invalid by the courts.

4. **Same—Government Agencies.**

   Where the statute authorizes a county to impose a tax for necessary expenses, it is a delegation of the power to be exercised by the county as an agency for the State for the convenience of local administration, and the statute is not void in failing to state the special object to which it is to be applied (Const., Art. V, sec. 7), nor is the tax itself invalid if this constitutional requirement has been observed by the county authority in the imposition of the special tax.

5. **Same—Records of Board—Collateral Attack—Correction of Records—Parties—Appeal and Error—Remand.**

   The clerk of the Superior Court is *ex officio* clerk of the board of county commissioners, and required to correctly record all of its proceedings; and while the record of the board so made as to the levy of a tax may not be impeached in a suit brought by a taxpayer against the sheriff to enjoin the collection of the tax, upon the ground of its unconstitutionality, it may be corrected *nunc pro tunc* by the board of commissioners itself to speak the truth, and this case is remanded, to the end that the commissioners may be made a party to that end.

Appeal from *Devin, J.,* at January Term, 1924, of Pasquotank.

Among other taxes levied by the board of commissioners for 1923 were the following: General county fund, 18 cents on the $100; county road bonds, 26 cents on the $100; general road fund, 6 cents on the $100; general floating debt, 3 cents on the $100; general county schools, 50 cents on the $100.

In December, 1923, the plaintiff brought suit against the defendant to enjoin the collection of $197.65, which was a tax of 3 cents on every

$100 valuation of its property, on the ground that the levy was in excess of the constitutional limitation. A temporary restraining order was issued, and the cause was heard and determined at the January Term, 1924, upon the complaint and answer (which were treated as affidavits), the resolution of the board of commissioners, the levy, and other record evidence.

The defendant in his answer alleged the facts to be substantially as follows: On 11 August, 1923, the board of commissioners met and first determined to levy 15 cents on each $100 valuation of property for general county purposes, and upon further consideration determined that it was necessary to levy a special tax of 3 cents on each $100 valuation for the construction and maintenance of bridges and the maintenance of the county home for the aged and infirm. The board then levied 15 cents for the general county fund and 3 cents as a special tax for the combined purposes of constructing and maintaining bridges and maintaining the home for the aged and infirm. At said meeting the clerk of the board placed the general county fund at 18 cents, adding the 15 cents, general county fund, and the levy of 3 cents for bridges and the county home, making 18 cents on the $100 valuation, and so expressed it in the resolution and on the minutes. For the purpose of computing the taxes, he carried it out on the tax books so as to make one calculation instead of two. The resolution as recorded on the minutes of the board of commissioners for said meeting of 11 August, 1923, is as appears in Exhibit A attached to the complaint. At the meeting of said board of commissioners held in the courthouse on 3 September, 1923, the same being the next regular meeting of the board, the minutes of the meeting held on the first Monday in August, 1923, were read and declared adopted.

His Honor apparently accepted the defendant's answer as true, and found the facts to be as therein set out.

The plaintiff contends that the board of commissioners levied 18 cents for the general county fund, and exceeded by 3 cents the limit prescribed by the Constitution, Art. V, sec. 6, and that the act under which it was levied (Public Laws 1923, ch. 7) is itself invalid. The defendant takes the position that, although the minutes of the board show a· levy of 18 cents for the general county fund, only 15 cents was levied for this purpose, and the additional 3 cents for maintaining the county home and building and repairing bridges. The plaintiff replies that the minutes of the board cannot be impeached in this action.

The restraining order was dissolved and the action dismissed. The plaintiff appealed.

*Thompson & Wilson for plaintiff.*
*Aydlett & Simpson for defendant.*

21—187

ADAMS, J. The plaintiff bases its claim to injunctive relief on the ground that the tax levied for general county purposes is in excess of the constitutional limitation, and therefore illegal. C. S., 858, 7979. There is no suggestion that the tax was levied in breach of Article VII, section 7, of the Constitution, or that the maintenance of the county home and the building and repairing of bridges do not involve a necessary expense. *Long v. Comrs.,* 76 N. C., 273; *Herring v. Dixon,* 122 N. C., 420. But the plaintiff says that the act purporting to authorize the levy of an annual tax in addition to the rate allowed by the organic law is itself invalid, because it conflicts with the provisions of Article V, section 6, of the Constitution.

The amended section is as follows: "The total of the State and county tax on property shall not exceed 15 cents on the $100 value of property, except when the county property tax is levied for a special purpose and with the special approval of the General Assembly, which may be done by special or general act: *Provided,* this limitation shall not apply to taxes levied for the maintenance of the public schools of the State for the term required by Article IX, section 3, of the Constitution: *Provided further,* the State tax shall not exceed 5 cents on the $100 value of property."

The tax was levied under this act: "The board of commissioners of the various counties in the State, for the purpose of maintaining roads, bridges, the upkeep of county buildings, county homes for the aged and infirm, and other similar institutions, and to supplement the general county fund, are hereby authorized to levy annually a tax upon all taxable property not to exceed 5 cents on the $100 of valuation, in addition to any tax allowed by any special statute for the above enumerated purposes, and in addition to the rate allowed by the Constitution." Private Laws 1923, ch. 7.

The plaintiff insists (1) that the tax therein proposed is to be levied, not for a special purpose, but for supplementing the general county fund; and (2) that even if the purpose of maintaining bridges and county institutions be construed as special, the purpose to supplement the general county fund is not special, and as one of the purposes is unauthorized the entire act must fail.

The Constitution, Art. V, sec. 6, was amended as hereinbefore set out in pursuance of chapter 93 of the Public Laws enacted at the Extra Session of 1920. Before the amendment, its provisions were these: "The taxes levied by the commissioners of the several counties for county purposes shall be levied in like manner with the State taxes, and shall never exceed the double of the State tax, except for a special purpose, and with the special approval of the General Assembly." C. S., Vol. 2, p. 1119; Const., sec. 6.

R. R. *v.* REID.

The "special approval" which, before the amendment, was to have been given by a special statute, may now be expressed by a special or a general act. It should be noted that the cases cited in support of the plaintiff's position were decided prior to the time the amendment went into effect. The first is *Williams v. Comrs.,* 119 N. C., 520. There it was shown that the General Assembly had authorized the commissioners of Craven County to levy a special tax for the special purpose of maintaining free public ferries, constructing, repairing and maintaining bridges, and meeting the other current expenses of the county (Public Laws 1895, ch. 201), and that the commissioners had levied a tax for all these purposes. It was further shown that the plaintiff had brought suit to enjoin the collection of the tax, and that a temporary restraining order theretofore granted had been vacated at the hearing. On appeal the judgment was reversed and the injunction was made permanent, two of the Justices dissenting. The Court decided that building bridges and maintaining public ferries are special purposes in the constitutional sense, but declared the tax unconstitutional on the ground that it had been levied, not only for these purposes, but to meet the current expenses of the county. The levy was treated as indivisible and the entire tax was held to be uncollectible.

In *R. R. v. Cherokee County,* 177 N. C., 86, the plaintiff sought to recover the amount of certain taxes paid under protest. The act there in controversy purported to authorize the board of commissioners of any county in the State to levy a special tax in excess of the constitutional limitation "to provide for any deficiency in the necessary expenses and revenue of said respective counties." Public Laws 1913, ch. 33, sec. 9. This Court held that the first and sixth sections of Article V of the Constitution (before they were amended) should be considered together; that the act of 1913 was not a special law, and that a tax levied for current expenses was not levied for a special purpose. In a concurring opinion *Mr. Justice Walker* dissented from the conclusion that section 6 permitted a tax exceeding the limit fixed in the first section; but by reason of the amendments this question is not now material. In a later reference to the case he said: "In that case the tax was intended to provide for past deficits in the revenues for ordinary and necessary county expenses, and fell directly within Article V, section 1, of the Constitution, prescribing the limitation and equation of taxation, not within section 6 of that article." *Parvin v. Comrs.,* 177 N. C., 508.

Also, in *R. R. v. Comrs.,* 178 N. C., 449, the object was to recover a tax which had been levied under a public-local law "to meet the current and necessary expenses of the county" (Public-Local Laws 1917, ch. 101, sec. 1), and the Court held, as in the *Cherokee case,* that the tax was illegal, and sustained the plaintiff's recovery.

Now, if we apply the statement of *Chief Justice Marshall,* that "every opinion, to be correctly understood, ought to be considered with a view to the case in which it was delivered" (*U. S. v. Burr,* 25 Fed. Cases, p. 165), we must conclude that, although a tax "to supplement the general county fund" is not a tax for special purpose, neither of the decisions cited by the plaintiff sustains the contention that the maintenance of the county home or the building and repair of bridges is not such special purpose as comes within the purview of the sixth section of Article V. On the contrary, while the construction and maintenance of the county home and the building and repairing of bridges may be considered a part of the ordinary expenses of the county, to be defrayed out of the general county revenue when sufficient for these purposes, still a tax levied under a special or general act for the specific and exclusive purpose of constructing, maintaining or repairing courthouses, jails, county homes, highways or bridges is deemed to be levied for a special purpose. Therefore, if the tax of 3 cents was levied to provide for constructing, repairing or maintaining bridges or the county home, the purpose was special. *Brodnax v. Groom,* 64 N. C., 244; *Jones v. Comrs.,* 107 N. C., 248; *Williams v. Comrs., supra; Herring v. Dixon, supra; R..R. v. Comrs.,* 148 N. C., 220, 240; *Jackson v. Comrs.,* 171 N. C., 379, 382; *Moose v. Comrs.,* 172 N. C., 419, 428; *Parvin v. Comrs., supra; R. R. v. McArtan,* 185 N. C., 201.

The plaintiff further objects that the act of 1923 does not indicate the special purpose to which the authorized tax shall be applied, and in this respect fails to comply with the mandate laid down in Article V, section 7, of the Constitution. This section provides that every act of the General Assembly levying a tax shall state the special object to which it is to be applied, and that it shall be applied to no other purpose. But in passing the act in question the Legislature neither professed nor intended to levy a tax, but merely to delegate its power of taxation within specified limitations to the various counties as agencies of the State for the convenience of the local administration. The exercise of such power has frequently been upheld and is now generally recognized. The reason for it, as stated in *Caldwell v. The Justices,* 57 N. C., 323, applies with equal force under existing conditions. "From time immemorial the counties, parishes, towns and territorial subdivisions of the country have been allowed in England, and, indeed, required to lay rates on themselves for local purposes. It is most convenient that the local establishments and police should be sustained in that manner; and, indeed, to the interest taken in them by the inhabitants of the particular districts, and the information upon the law and public matters generally thereby diffused through the body of the people, has been attributed by profound thinkers much of that spirit of liberty and capacity for self-government

through representatives which has been so conspicuous in the mother country and so eminently distinguishes the people of America. From the foundation of our Government, colonial and republican, the sums necessary for local purposes have been raised by the people or authorities at home. Courthouses, prisons, bridges, poorhouses, and the like, are thus built and kept up, and the expenses of maintaining the poor and of prosecutions and jurors are thus defrayed, and of late a portion of the common-school fund and a provision for the indigent insane are thus raised, while the highways are altogether constructed and repaired by the local labor distributed under the orders of the county magistrates. When, therefore, the Constitution vests the legislative power in the General Assembly, it must be understood to mean that power as it had been exercised by our forefathers before and after their migration to this continent."

From the decisions cited it seems to be clear that a tax cannot be levied under the act of 1923 "to supplement the general county fund," and that the clause purporting to authorize such tax runs counter to Article V, section 6, of the Constitution; but we do not concur in the argument that the act is for this reason void in its entirety. A statute may be constitutional in part, and in part unconstitutional. "The general proposition must be conceded that in a statute which contains invalid or unconstitutional provisions, that which is unaffected by these provisions, or which can stand without them, must remain. If the valid and invalid are capable of separation, only the latter may be disregarded." *Board etc. v. Stanley,* 105 U. S., 405; 26 Law Ed., 1044, 1050. An examination will show that our own decisions are in accord with this principle. *Johnson v. Winslow,* 63 N. C., 552; *S. v. Joyner,* 81 N. C., 534; *S. v. Barringer,* 110 N. C., 525, 529; *McCless v. Meekins,* 117 N. C., 34, 39; *Greene v. Owen,* 125 N. C., 212, 222; *Smith v. Wilkins,* 164 N. C., 136, 146; *Moran v. Comrs.,* 168 N. C., 289. It follows, then, that the invalidity of the clause purporting to authorize the levy of a tax to supplement the general county fund, in addition to the rate allowed by the Constitution, does not essentially nullify the other provisions of the act of 1923. We see no sufficient reason for holding that a tax separately levied for any of the special purposes therein specified (excluding the tax to supplement the general county fund) may not be collected if the requirements as to the manner of making the levy are complied with. So the controversy between the parties in the case before us turns upon the question whether the tax of 3 cents was levied for special purposes, as contended by the defendant, or for the benefit of the general county fund, as contended by the plaintiff. If it was imposed to supplement the general county fund, as the minutes of the board seem to indicate, it cannot be collected.

This conclusion leads to consideration of the objection which presents the question whether the record of the commissioners can be attacked and error shown in a collateral proceeding between the taxpayer and the tax collector. As stated heretofore, the minutes show that 18 cents on property valued at $100 was levied for general county purposes. Can the record showing this levy be contradicted or altered or corrected at the instance of the officer who collects the taxes, when the commissioners are given no opportunity to be heard? Would not such procedure demoralize the system under which taxes are levied, and result in

> . . . "ruin upon ruin, rout on rout,
> Confusion worse confounded"?

The register of deeds is constituted clerk *ex officio* of the board of commissioners, and is required to record all the proceedings of the board in a book to be provided for this purpose. C. S., 1309, 1310. The object is to preserve a memorial of official transactions, which shall serve both as a record and as a guide. By this memorial the commissioners speak. It is the evidence of what they have said and done—the record of their proceedings. "Courts of record speak only in their records. They preserve written memorials of their proceedings, which are exclusively the evidence of those proceedings. If they choose to keep minutes, which they understand and can act on to their own satisfaction, it is well. If from them they can afterwards undertake to draw out the record to perpetuate it to their successors or to communicate its contents to another court, I know nothing to prevent them, but the difficulty in their own minds of being sure they make it what it was intended originally to be. But until the record be so framed, another court cannot know more than the words of the minutes in themselves import. The records may be identified by testimony, but their contents cannot be altered, nor their meaning explained by parol. The acts of the court cannot thus be established." *Wade v. Odeneal,* 14 N. C., 423. This conclusion, we think, is sustained by several decisions. *Cline v. Lemon,* 4 N. C., 323; *Spencer v. Cohoon,* 18 N. C., 27; *Galloway v. McKeithen,* 27 N. C., 12; *Edwards v. Tipton,* 77 N. C., 222, 226; *Wilson v. Markley,* 133 N. C., 616; *Re Joseph Young,* 22 L. R. A. (U. S.) (Cal.), 330.

Can the record of the levy yet be amended if it was incorrectly made and is not subject to collateral attack?

If the tax of 3 cents was properly levied and apportioned, as contended by the defendant, and was combined with the county tax by the clerk of the board only as a matter of convenience to him in making his computation and as a means of obviating the necessity of running out two calculations, it may be possible for the commissioners to amend their record *nunc pro tunc,* so that it may "speak the truth." In *Wal-*

*ton v. Pearson,* 85 N. C., 35, 48, it is said: "It is the duty of every court to supply the omissions of its officers in recording its proceedings, and to see that its record truly sets forth its action in each and every instance; and this it must do upon the application of any person interested, and without regard to its effect upon the rights of parties or of third persons; and neither is it open to any other tribunal to call in question the propriety of its action or the verity of its records as made. This power of a court to amend its records has been too often recognized by this Court, and its exercise commended, to require the citation of authorities, other than a few of the leading cases on the subject. See *Phillipse v. Higdon,* 44 N. C., 380; *Foster v. Woodfin,* 65 N. C., 29; *Mayo v. Whitson,* 47 N. C., 231; *Kirkland v. Mangum,* 50 N. C., 313."

But such amendment can be made only by the commissioners, and only in case they find that the entry on their minutes is incorrect—that it does not speak the truth. If the tax was levied, as it now appears on their record, they have no power to amend it. But in view of the importance of the controversy, we think they should have an opportunity to be heard. We have, therefore, concluded that the rights of the parties may be protected and the controversy more satisfactorily determined by remanding the cause to the Superior Court of Pasquotank County, with leave to the plaintiff or the defendant to move that the board of commissioners be made a party to the action. All the questions involved in the appeal may then be disposed of in accordance with this decision. If the board be not made a party, or if it be determined that the tax of 18 cents was in fact levied for general county purposes, as it now appears upon the minutes of the board, the order restraining the collection of the tax in excess of 15 cents should be made permanent. For these reasons the judgment is reversed and the cause remanded.

The plaintiff will recover the cost of this appeal.

Reversed and remanded.