IN THE MATTER OF: THE APPEAL OF JOE BARBOUR FROM THE DECISION OF THE NORTH CAROLINA PROPERTY TAX COMMISSION EXCLUDING FROM TAXATION CERTAIN PROPERTY OWNED BY LUTHERAN RETIREMENT MINISTRIES, INC., AND DOING BUSINESS AS "TWIN LAKES CENTER"

No. 9210PTC570

(Filed 2 November 1993)

1. **Constitutional Law § 52 (NCI4th) — constitutionality of statute — standing of property owner to challenge**

As a property owner who owned his property for a private personal residence, appellant had standing to challenge the constitutionality of N.C.G.S. § 105-275(32), which exempted from taxation property owned by certain homes for the aged, sick, or infirm, on the basis that the statute discriminated against the class of individual residential property owners who own their property for private personal residences and are not exempt under the statute from taxation; however, appellant lacked standing to challenge the statute on the basis that it discriminated against non-religious, non-Masonic homes for the aged, sick, or infirm, since he was not a member of that class.

**Am Jur 2d, Constitutional Law § 190.**

2. **Constitutional Law § 91 (NCI4th); Taxation § 2.3 (NCI3d) — tax-exempt status for homes for aged and infirm — no discrimination against individual property owners — no violation of rule of uniformity in taxation**

N.C.G.S. § 105-275(32), which grants tax-exempt status to certain homes for the aged, sick, or infirm, does not discriminate against individual property owners who own their property for residential purposes in violation of the rule of uniformity in taxation established under N.C. Const. art. V, § 2, since the classification of homes for the aged, sick, or infirm is neither arbitrary nor capricious.

**Am Jur 2d, Constitutional Law §§ 756, 757; State and Local Taxation § 162.**

## IN RE APPEAL OF BARBOUR

[112 N.C. App. 368 (1993)]

**3. Constitutional Law § 91 (NCI4th); Taxation § 2.3 (NCI3d) — tax exemption for homes for aged or infirm — no discrimination against individual property owners — legitimate state interest — rational relationship between exemption and state interest**

There was no merit to appellant's contention that N.C.G.S. § 105-275(32), which exempted from taxation certain homes for the aged, sick, or infirm, violated the equal protection clause of N.C. Const. art. I, § 19 by discriminating against individual residential property owners, since promoting the safety and welfare of the aged or infirm is a legitimate state objective; the exemption from taxation of these certain homes and the property used to run them has some rational relationship to this legitimate state interest; and the distinction between "homes for the aged, sick, or infirm" and individual property owners under the statute is not unconstitutional.

**Am Jur 2d, Constitutional Law §§ 756, 757; State and Local Taxation § 176.**

Appeal by Joe Barbour from a decision of the Property Tax Commission entered 23 January 1992 affirming the decision of the Alamance County Board of Commissioners. Heard in the Court of Appeals 29 April 1993.

*Joseph P. Barbour, pro se, appellant.*

*Poyner & Spruill, by J. Phil Carlton and Susanne F. Hayes, for appellee Lutheran Retirement Ministries of Alamance County, Inc.*

*Amicus Curiae Brief filed by Jordan, Price, Wall, Gray & Jones, by Robert R. Price and Karen G. Z. Macklin, for North Carolina Association of Non-Profit Homes for the Aging.*

ORR, Judge.

In August of 1987, the Alamance County Board of Commissioners (the "Board") granted Lutheran Retirement Ministries of Alamance County ("LRM") its application for property tax exclusion pursuant to N.C. Gen. Stat. § 105-275(32). On 8 September 1987, Joe Barbour, a member of the Board, submitted an application for hearing with the North Carolina Property Tax Commission (the "Commission") challenging the Board's decision and alleging that LRM had failed to meet the exemption requirements of G.S.

§§ 105-275 and -278.6. On 9 October 1987, the Commission allowed LRM's application for intervention in Barbour's appeal. After a hearing, on 23 January 1992, the Commission entered an order affirming the Board's decision. From this order, Barbour appeals.

In April 1992, Barbour served LRM with his proposed record on appeal bringing forth three assignments of error. Pursuant to N.C. R. App. P. 18(d)(2), LRM filed and served its Notice of Objections and Amendments to the Proposed Record on Appeal. In its Notice, LRM asserted that Barbour's proposed record did not conform to N.C. R. App. P. 18(c) and that the record did not include the "whole record" including the verbatim transcript and all the exhibits presented as evidence at the hearing in front of the Commission.

On 3 June 1992, the Chairman of the Commission entered an order settling the record on appeal. In this order, the Chairman stated that Barbour agreed to abandon the issues raised in his first two assignments of error. Based on this agreement, the order modified the record to exclude the exhibits presented at the hearing before the Commission and the verbatim transcript of the hearing.

Subsequently, Barbour filed the record on appeal with this Court. The record which Barbour filed included the financial statements of LRM for 1989-1990, differential analysis of fees in North Carolina for continuing care facilities as presented by LRM, portions of an admission packet for continuing care, a graph for charitable work presented by LRM, the Property Tax Bulletin Number 79 by the Institute of Government and a videotape depicting portions of the subject property. The Commission had ordered all of these items specifically excluded from the record in its order settling the record on appeal.

On 22 June 1992, LRM filed a motion pursuant to N.C. R. App. P. 9(b)(2), (5) and N.C. R. App. P. 25 for this Court to reform the record on appeal or to sanction Barbour for disregarding the order settling the record on appeal. This Court granted the portion of the motion to reform the record but declined to impose sanctions. Thus, in deciding this action, this Court did not consider those exhibits that should have been excluded from the record on appeal, and we limited our decision to the sole issue of whether N.C. Gen. Stat. § 105-275(32) is unconstitutional on its face.

In the record, Barbour challenges the constitutionality of G.S. § 105-275(32) under the North Carolina Constitution, specifically quoting from Article I, § 19 that "[n]o person shall be denied the equal protection of the laws" and from Article V, § 2 that "[n]o class of property shall be taxed except by uniform rule". No other constitutional grounds are specifically set out in the record or alluded to in Barbour's notice of appeal to the Commission. In his brief, however, Barbour argues additionally that this statute violates the federal constitution. Under N.C. Gen. Stat. § 105-345.2(c), Barbour is not permitted to rely upon any grounds for relief on appeal which were not set forth specifically in his notice of appeal filed with the Commission. Additionally, Barbour has failed to cite any authority for his claim that this statute violates the federal constitution. Accordingly, any claims that G.S. § 105-275(32) violates the federal constitution are deemed abandoned. *See* N.C. R. App. P. 28(b)(5). Thus, the only issue on appeal is whether N.C. Gen. Stat. § 105-275(32) is unconstitutional on its face under the North Carolina Constitution.

I.

N.C. Gen. Stat. § 105-275(32) exempts from taxation "[r]eal and personal property owned by a home for the aged, sick, or infirm, that is exempt from tax under Article 4 of [Chapter 105], and is used in the operation of that home." Under this statute, the home must be a "self-contained community that"

(i) is designed for elderly residents; (ii) operates a skilled nursing facility, an intermediate care facility, or a home for the aged; (iii) includes residential dwelling units, recreational facilities, and service facilities; (iv) the charter of which provides that in the event of dissolution, its assets will revert or be conveyed to an entity organized exclusively for charitable, educational, scientific, or religious purposes, and which qualifies as an exempt organization under Section 501(c)(3) of the Internal Revenue Code of 1986; (v) is owned, operated, and managed by one of the following entities:

A. A congregation, parish, mission, synagogue, temple, or similar local unit of a church or religious body;

B. A conference, association, division, presbytery, diocese, district, synod, or similar unit of a church or religious body;

C. A Masonic organization whose property is excluded from taxation pursuant to G.S. 105-275(18); or

D. A nonprofit corporation governed by a board of directors at least a majority of whose members elected for terms commencing on or before December 31, 1987, shall have been elected or confirmed by, and all of whose members elected for terms commencing after December 31, 1987, shall be selected by, one or more entities described in A., B., or C. of this subdivision, or organized for a religious purpose as defined in G.S. 105-278.3(d)(1); and

(vi) has an active program to generate funds through one or more sources, such as gifts, grants, trusts, bequests, endowment, or an annual giving program, to assist the home in serving persons who might not be able to reside at the home without financial assistance or subsidy.

N.C. Gen. Stat. § 105-275(32) (1992).

## II.

Barbour contends that N.C. Gen. Stat. § 105-275(32) is unconstitutional in that it violates the equal protection clause of N.C. Const. art. I, § 19 and the uniform rule of taxation under N.C. Const. art. V, § 2(1), (2). Specifically, Barbour argues that this statute discriminates against: (1) individual property owners who own their property for personal residential purposes, and (2) homes for the aged, sick, or infirm that are non-religious and non-Masonic.

[1] Before we can address these arguments, however, we must address Barbour's standing to bring this constitutional challenge. Our Supreme Court analyzed the question of standing in *Stanley v. Department of Conservation and Dev.*, 284 N.C. 15, 199 S.E.2d 641 (1973). The Court stated:

Under our decisions "[o]nly those persons may call into question the validity of a statute who have been injuriously affected thereby in their persons, property or constitutional rights." . . . The rationale of this rule is that only one with a genuine grievance, one personally injured by a statute, can be trusted to battle the issue. "The 'gist of the question of standing' is whether the party seeking relief has 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentations

of issues upon which the court so largely depends for illumination of difficult constitutional questions.' "

*Id.* at 28, 199 S.E.2d at 650 (citations omitted). Further,

"A taxpayer injuriously affected by a statute may generally attack its validity. Thus, he may attack a statute which . . . exempts persons or property from taxation, or imposes on him in its enforcement an additional financial burden, however slight."

*Id.* at 29, 199 S.E.2d at 651 (citation omitted).

If a person is attacking the statute on the basis that the statute is discriminatory, however, the person " 'has no standing for that purpose unless he belongs to the class which is prejudiced by the statute.' " *In re Appeal of Martin*, 286 N.C. 66, 75, 209 S.E.2d 766, 773 (1974) (citation omitted); *State v. Vehaun*, 34 N.C. App. 700, 703-04, 239 S.E.2d 705, 708 (1977), *cert. denied*, 294 N.C. 445, 241 S.E.2d 846 (1978) (" 'He who seeks to raise the question as to the validity of a discriminatory statute has no standing for that purpose unless he belongs to the class which is discriminated against.' "); *Roberts v. Durham County Hosp. Corp.*, 56 N.C. App. 533, 538, 289 S.E.2d 875, 878, *motion to dismiss denied, disc. review allowed*, 306 N.C. 387, 294 S.E.2d 205 (1982), *aff'd*, 307 N.C. 465, 298 S.E.2d 384 (1983) ("It is fundamental that a person seeking to raise the question as to the validity of an allegedly discriminatory statute has no standing for that purpose unless he belongs to the class allegedly prejudiced by the statute."). "One recognized exception to this rule allows an affected party to allege discrimination when no member of a class subject to the alleged discrimination is in a position to raise the constitutional question." *In re Appeal of Martin, supra.*

In the present case, Barbour first alleges that N.C.G.S. § 105-275(32) discriminates against the class of individual residential property owners who own their property for private personal residences and are not exempt under the statute from taxation. Barbour is a member of this class, and the exemption of property under this statute affects him as a residential property owner subject to taxation. Thus, based on the previously cited law, Barbour has standing to challenge the statute on this basis.

Next, Barbour alleges that N.C.G.S. § 105-275(32) discriminates against the class of homes for the aged, sick, or infirm, which

are non-religious and non-Masonic. Barbour is not a member of this classification. Further, taxpayers of this State who are members of this class are under no disability to challenge this statute as discriminating against them. Thus, based on the previously cited law, Barbour lacks standing to challenge the statute on the basis that it discriminates against non-religious, non-Masonic homes for the aged, sick, or infirm. *See In re Appeal of Moravian Home, Inc.*, 95 N.C. App. 324, 329, 382 S.E.2d 772, 775, *disc. review denied, appeal dismissed*, 325 N.C. 707, 388 S.E.2d 457 (1989). We will not, therefore, address this argument, and our decision today is in no way dispositive of this issue.

### III.

[2]    Barbour argues that N.C.G.S. § 105-275(32) discriminates against individual property owners who own their property for residential purposes in violation of the rule of uniformity in taxation established under N.C. Const. art. V, § 2.

"Article V, Section 2 of the Constitution of North Carolina provides, *inter alia*, that the General Assembly alone has the power to classify property for taxation and that *no class shall be taxed except by a uniform rule." Appeal of Martin*, 286 N.C. at 75, 209 S.E.2d at 773 (emphasis in original); N.C. Const. art. V, § 2(2). This constitutional provision does not, however, "prohibit reasonable flexibility and variety appropriate to reasonable schemes of State taxation." *Appeal of Martin, supra.*

"While the General Assembly may not establish a classification that is arbitrary or capricious, a classification is constitutional if founded upon a reasonable distinction or difference and bears a substantial relation to the object of the legislation." *Id.* at 76, 209 S.E.2d at 773. Thus, " '[i]t is only those classifications which are arbitrary or capricious which violate Article V, Section 2.' " *In re Appeals of Certain Timber Companies*, 98 N.C. App. 412, 416, 391 S.E.2d 503, 505 (1990) (citation omitted).

In the present case, the two classes at issue are (1) individual property owners who own their property for residential purposes and are not exempt under N.C.G.S. § 105-275(32), and (2) homes for the aged, sick, or infirm that are exempt under N.C.G.S. § 105-275(32). Thus, the question presented is whether these classifications are founded upon a rational basis, so that the distinction between the two residential groups may be upheld by this Court.

## IN RE APPEAL OF BARBOUR

[112 N.C. App. 368 (1993)]

*See Broadwell Realty Corp. v. Coble*, 291 N.C. 608, 617, 231 S.E.2d 656, 662 (1977).

To determine whether this classification is arbitrary, it is necessary to examine the purpose for the distinction in the statute between these homes and non-exempt individual residential properties. *See Appeals of Certain Timber Companies*, 98 N.C. App. 412, 391 S.E.2d 503 (1990).

A review of the case law involving the tax-exempt status of homes for the aged, sick, or infirm and applicable statutes prior to the enactment of N.C. Gen. Stat. § 105-275(32) is instructive on this issue. N.C. Gen. Stat. §§ 105-278.6 and 105-278.7 create property tax-exemptions for charitable institutions. Under N.C. Gen. Stat. § 105-278.6 (1992):

(a) Real and personal property owned by:

. . .

(2) A home for the aged, sick, or infirm;

. . .

shall be exempted from taxation if: (i) As to real property, it is actually and exclusively occupied and used, and as to personal property, it is entirely and completely used, by the owner for charitable purposes; and (ii) the owner is not organized or operated for profit.

(b) A charitable purpose within the meaning of this section is one that has humane and philanthropic objectives; it is an activity that benefits humanity or a significant rather than limited segment of the community without expectation of pecuniary profit or reward. . . . .

Further, under N.C. Gen. Stat. § 105-278.7 (1992):

(a) Buildings, the land they actually occupy, and additional adjacent land necessary for the convenient use of any such building shall be exempted from taxation if wholly owned by an agency listed in subsection (c), below, and if:

(1) Wholly and exclusively used by its owner for nonprofit educational, scientific, literary, or charitable purposes . . . or

(2) Occupied gratuitously by an agency listed in subsection (c), below, other than the owner, and wholly and exclu-

sively used by the occupant for nonprofit educational, scientific, literary, or charitable purposes.

. . .

(c) The following agencies, when the other requirements of this section are met, may obtain property tax exemption under this section:

(1) A charitable association or institution,

. . . .

In 1980, this Court applied N.C. Gen. Stat. § 105-278.7 to affirm the decision of the Property Tax Commission in *In re Taxable Status of Property*, 45 N.C. App. 632, 263 S.E.2d 838, *disc. review denied*, 300 N.C. 374, 267 S.E.2d 684 (1980) to grant tax exempt status to a nursing home as a charitable institution. The nursing home at issue in that case, the W.R. Winslow Memorial Home, Inc., was operated mainly for the aged and infirm and was affiliated with the Seventh-Day Adventist Church.

The issue before this Court in *Taxable Status of Property* was whether the W.R. Winslow Memorial Home, Inc. was a "charitable institution" and whether it used the property in question for a "charitable purpose" as required by N.C. Gen. Stat. § 105-278.7. This Court quoted favorably from *Central Bd. on Care of Jewish Aged, Inc. v. Henson*, 120 Ga. App. 627, 630, 171 S.E.2d 747, 750 (1969) in which the Georgia Court of Appeals stated,

". . . '[t]he concept of charity is not confined to the relief of the needy and destitute, for "aged people require care and attention apart from financial assistance, and the supply of this care and attention is as much a charitable and benevolent purpose as the relief of their financial wants." ' "

Subsequently, this Court affirmed the Commission's finding that the W.R. Winslow Memorial Home, Inc. qualified for an exemption under N.C. Gen. Stat. § 105-278.7.

On the other hand, in 1983, this Court applied N.C. Gen. Stat. §§ 105-278.6 and 105-278.7 to affirm the Commission's decision to deny tax-exempt status for a home for the elderly in *In re Appeal of Chapel Hill Residential Retirement Center, Inc.*, 60 N.C. App. 294, 299 S.E.2d 782, *disc. review denied*, 308 N.C. 386, 302 S.E.2d 249 (1983). The home at issue in *Appeal of Chapel Hill Residential*

## IN RE APPEAL OF BARBOUR

[112 N.C. App. 368 (1993)]

*Retirement Center, Inc.*, which was referred to as the Center, was a non-profit corporation that operated a complex which amounted to a "self-contained community" designed for elderly residents. "The Center consist[ed] of 230 apartments, a 60 bed health center, service facilities, a dining hall, a social hall, a gift shop, lounge areas and recreational facilities." *Id.* at 295, 299 S.E.2d at 783. Further, the Center did not rely on outside funding in order to operate.

In affirming the Commission's decision not to grant the Center tax-exempt status as a charitable institution, this Court stated,

> [t]he Center is more in the nature of a cooperative operated for the mutual benefit of its residents who collectively pay for their care; it is not an institution providing for the special needs of individuals who are in need of charity, the aid of whom benefits society as a whole in addition to the residents.

*Id.* at 304, 299 S.E.2d at 788.

Similarly in 1984, in *In re Appeals of Barham*, 70 N.C. App. 236, 319 S.E.2d 657, *disc. review denied*, 312 N.C. 622, 323 S.E.2d 921 (1984), this Court again affirmed the decision of the Property Tax Commission to deny tax-exempt status to another home for the elderly as a charitable institution. In *Appeals of Barham*, respondent in the present case, LRM, applied for tax-exempt status under N.C. Gen. Stat. § 105-278.6 for its home for the elderly. In determining whether LRM qualified as a charitable institution, this Court stated:

> In order to qualify for an exemption from *ad valorem* taxes, property must be used for a humane and philanthropic purpose and it must be used to benefit a significant segment of the community. LRM argues that it meets the qualifications because [its home] would provide for the basic social needs of its residents for love, safety and a sense of belonging. LRM further argues that a significant portion of the elderly in the Alamance County area would be able to afford these services.

> We cannot agree with LRM's contentions. As we stated in *In re Chapel Hill Residential Retirement Center, supra*: "merely supplying care and attention to elderly persons cannot, alone constitute charity."

*Id.* at 243, 319 S.E.2d at 661. After discussing the fact that funds for operation of the home came mainly from the residents and

that LRM screened their residents, this Court affirmed the Commission's decision that LRM was not a charitable institution within the meaning of N.C. Gen. Stat. § 105-278.6.

In response to this line of cases, in 1987, the North Carolina General Assembly introduced House Bill 318 entitled, "AN ACT TO CLARIFY THE EXEMPTION OF CERTAIN HOMES FOR THE AGED, SICK, OR INFIRM FROM PROPERTY TAXATION" to amend N.C. Gen. Stat. § 105-278.6. Subsequently this bill was renamed "AN ACT TO CLASSIFY PROPERTY OWNED BY CERTAIN NON PROFIT HOMES FOR THE AGED, SICK OR INFIRM AND EXCLUDE THIS PROPERTY FROM TAXATION", and on 12 June 1987 this bill was ratified and codified as N.C. Gen. Stat. § 105-275(32), the statute at issue in the present case.

N.C. Gen. Stat. § 105-275(32) defines "home for the aged, sick, or infirm" as a self-contained community designed for elderly residents that operates a skilled nursing facility, an intermediate care facility, or a home for the aged and includes residential dwelling units, recreational facilities, and service facilities. Further, the charter of the home has to provide that "in the event of dissolution, its assets will revert or be conveyed to an entity organized exclusively for charitable, educational, scientific, or religious purposes, and which qualifies as an exempt organization under Section 501(c)(3)" of the 1986 Internal Revenue Code. N.C. Gen. Stat. § 105-275(32). The home must also be owned, operated, and managed by one of the nonprofit, religious or Masonic groups listed in the statute.

The classification of homes for the aged, sick, or infirm is neither arbitrary nor capricious. Rather, after homes set up as communities to care for the elderly or infirm lost their status as tax-exempt charitable institutions, the Legislature sought to enact a statute that would grant these communities a tax-exemption aside from the charitable tax-exemption. The definition of "home for the aged, sick, or infirm" under N.C. Gen. Stat. § 105-275(32) reflects this intent and is narrowly tailored to promote communities for the elderly without giving a tax windfall to all residential property owners. See Appeals of Certain Timber Companies, 98 N.C. App. 412, 391 S.E.2d 503 (1990).

Thus, the distinction between "homes for the aged, sick, or infirm" and individuals who are residential property owners in N.C. Gen. Stat. § 105-275(32) does not violate N.C. Const. art. V, § 2. See id. (in order to prove a statute is unconstitutional under

N.C. Const. art. V, § 2, petitioner must show that the distinction drawn between two classes as a basis for different tax treatment is either arbitrary or capricious).

## IV.

[3] Next, Barbour argues that N.C. Gen. Stat. § 105-275(32) violates the equal protection clause of N.C. Const. art. I, § 19 by discriminating against individual residential property owners. We disagree.

A two-tiered analysis is employed by courts when addressing an equal protection claim. *Appeals of Certain Timber Companies*, 98 N.C. App. at 419, 391 S.E.2d at 507. The highest level of "strict scrutiny" applies " 'only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class.' " *Id.* The lower level of scrutiny applies when no fundamental right or suspect class is involved. *Id.* at 420, 391 S.E.2d at 507. Individual residential property owners are not a suspect class, and a fundamental right is not involved; the lower level of scrutiny, therefore, applies in the present case.

" 'A statutory classification survives [the lower level of scrutiny] analysis if it bears "some rational relationship to a conceivable legitimate interest of government." . . . .' " *Id.* (citation omitted). Further, statutes which are subjected to the lower level of scrutiny " 'come before the Court with a presumption of validity' ", and "the party challenging the legislation has a tremendous burden in showing that the questioned legislation is unconstitutional." *Id.* at 420, 391 S.E.2d at 507-08 (citation omitted).

In the present case, Barbour has failed to demonstrate that the statute is unconstitutional because he has failed to " 'negative every conceivable basis' that could exist to support this legislation." *Id.* at 421, 391 S.E.2d at 508. As already explained, the General Assembly intended to promote residential communities for the elderly which did not qualify for tax-exemptions under prior statutes by classifying certain of these homes as tax-exempt under N.C.G.S. § 105-275(32). Under the statute's definition of "home for the aged, sick, or infirm" set out previously, the exempt homes must provide residential and health facilities for the elderly.

Promoting the safety and welfare of the aged or infirm is a legitimate state objective. *See Tripp v. Flaherty*, 27 N.C. App. 180, 185, 218 S.E.2d 709, 712 (1975). Further, the exemption from

taxation of these certain homes and the property used to run them has some rational relationship to this legitimate state interest. Thus, the distinction between "homes for the aged, sick, or infirm" and individual residential property owners under N.C. Gen. Stat. § 105-275(32) is not unconstitutional under N.C. Const. art. I, § 19.

Affirmed.

Judge JOHNSON concurs.

Judge McCRODDEN concurs in the result.