IN THE MATTER OF: THE APPEAL OF SPRINGMOOR, INC. AND AMMONS, INC. FROM THE DENIAL OF APPLICATIONS FOR EXEMPTION BY THE WAKE COUNTY BOARD OF EQUALIZATION AND REVIEW FOR 1994

No. COA96-113

(Filed 21 January 1997)

1. **Constitutional Law § 51 (NCI4th)— property tax exemption—homes for aged—religious affiliation—constitutionality—standing**

   Springmoor, a retirement community for the aged, sick, and infirm, had standing to address the constitutionality of N.C.G.S. § 105-275(32), which exempts from taxation homes for the aged, sick and infirm which are owned, operated and managed by entities including religious bodies, where Springmoor alleged that the statute discriminates against the class of homes which are non-religious and non-Masonic. Although Springmoor is not the owner of the real property, it does own personal property for which an exemption was denied because it was not owned and operated by a Masonic organization or religious body and it has established a genuine grievance and alleged such a personal stake in the outcome that the necessary concrete adverseness can be assured.

   **Am Jur 2d, Constitutional Law § 202.**

2. **Constitutional Law § 119 (NCI4th); Taxation § 28 (NCI4th)— property tax exemption—homes for the aged—religious affiliation—unconstitutional**

   N.C.G.S. § 105-275(32)(v), which exempts from property tax homes for the sick, aged, and infirm which are owned, operated, and managed by a religious body, violates the constitutional prohibition against the establishment of religion as found in the First

IN RE SPRINGMOOR, INC.

[125 N.C. App. 184 (1997)]

Amendment of the United States Constitution and Article I, section 13 of the North Carolina Constitution. The constitutional infirmity arises because the statute distinguishes within the class of homes for the aged, sick and infirm those that are religiously affiliated and those that perform essentially the same functions but lack any religious affiliation, granting exemption to the former while denying exemption to the later. The classification is narrowly divided so as to prefer religion over non-religion, no legitimate secular objection sufficient to justify this preference can be identified, and the effect is hardly one of benevolent and secular neutrality. However, applying the doctrine of severability, only subpart (v) is unconstitutional and the remainder of N.C.G.S. § 105-275(32) may stand independent of the unconstitutional subpart.

**Am Jur 2d, Constitutional Law §§ 464 et seq.**

Appeal by Springmoor, Inc., and Ammons, Inc., from order entered 16 November 1995 by the North Carolina Property Tax Commission. Heard in the Court of Appeals 9 October 1996.

On 27 January 1994, taxpayer Ammons, Inc., ("Ammons") requested a real property tax exemption for its property located at 1500 Sawmill Road in Raleigh, North Carolina. The property was, and still is, leased to taxpayer Springmoor, Inc., ("Springmoor") a North Carolina non-profit corporation, for use as a retirement community for the aged, sick and infirm. Concurrent with Ammons' request for exemption, Springmoor filed a request for a personal property tax exemption on certain items of personal property owned by Springmoor and used in the operation of the home for the aged, sick and infirm.

On 22 February 1994, the Wake County Tax Assessor ("Assessor") denied both requests, and both parties appealed to the Wake County Board of Equalization and Review ("Board"). Thereafter, on 25 April 1994, the Board agreed with the Assessor and denied taxpayers' request for an exemption. On appeal, the North Carolina Property Tax Commission ("Commission") affirmed and set forth the following conclusions of law in its opinion:

1. Springmoor qualifies for exemption under G.S. 105-275(32) under subsections (i) through (iv) and (vi), but does not meet the requirements of subsection (v) of that statute.

**IN RE SPRINGMOOR, INC.**

[125 N.C. App. 184 (1997)]

2. Springmoor would be entitled to exemption under G.S. 105-275(32) if it were owned and operated by a Masonic organization or if it were affiliated with a religious body.

3. The Court of Appeals has noted that the Property Tax Commission does not have the authority to act upon constitutional challenges to tax statutes. Johnston v. Gaston County, 71 N.C. App. 707, 323 S.E.2d 381 (1984), cert. denied, 313 N.C. 508, 320 S.E.2d 392 (1985). However, by raising constitutional challenges at this level, Taxpayer preserves them for decision by the appellate Courts. Id., 71 N.C. App. at 713, citing Great American Insurance Co. v. Gold, 254 N.C. 168, 118 S.E.2d 792 (1961). Thus, this Commission is limited to opining without deciding the constitutionality of the statutory exclusion for religiously affiliated retirement centers.

This Commission has stated in an earlier case that G.S. 105-275(32) is of doubtful constitutional validity. . . .

The Commission entered this order on 16 November 1995. Taxpayers Springmoor and Ammons filed timely notice of appeal on 7 December 1995 and excepted to the Commission's order on the grounds that G.S. 105-275(32) is unconstitutional. Wake County then cross-assigned error to the Commission's order, asserting that G.S. 105-275(32) is unconstitutional and that, the whole of G.S. 105-275(32) being unconstitutional, taxpayers are therefore not exempt from taxation here.

*Wake County Attorney's Office by Deputy County Attorney Shelley T. Eason for appellee/cross-appellant Wake County.*

*James M. Kimzey for appellants Springmoor and Ammons.*

*Poyner & Spruill, L.L.P., by Susanne F. Hayes and Robin T. Morris, for amicus curiae Non-Profit Qualifying Homes for the Aging.*

EAGLES, Judge.

[1] We first address the threshold question of whether either appellant Springmoor, appellant Ammons, or cross-appellant Wake County, has standing to challenge the constitutionality of G.S. 105-275(32). It is well-established that "in order to challenge the constitutionality of a tax statute, an appellant must be a 'member of the class subject to discrimination.' " *In re Appeal of Moravian Home, Inc.*, 95 N.C. App.

## IN RE SPRINGMOOR, INC.

[125 N.C. App. 184 (1997)]

324, 329, 382 S.E.2d 772, 775, *disc. review denied*, 325 N.C. 707, 388 S.E.2d 457 (1989) (quoting *In re Appeal of Martin*, 286 N.C. 66, 75, 209 S.E.2d 766, 772 (1974)).

> "Only those persons may call into question the validity of a statute who have been injuriously affected thereby in their persons, property or constitutional rights. . . ." The rationale of this rule is that only one with a genuine grievance, one personally injured by a statute, can be trusted to battle the issue. "The 'gist of the question of standing' is whether the party seeking relief has 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentations of issues upon which the court so largely depends for illumination of difficult constitutional questions.' "

*Stanley v. Dept. of Conservation and Development*, 284 N.C. 15, 28, 199 S.E.2d 641, 650 (1973) (citations omitted). Applying this standard we first consider whether appellant taxpayer Springmoor has standing to maintain this appeal.

Springmoor alleges that G.S. 105-275(32) "discriminates against the class of homes for the aged, sick, or infirm, which are non-religious and non-Masonic." *In re Appeal of Barbour*, 112 N.C. App. 368, 373-74, 436 S.E.2d 169, 173 (1993). Springmoor is a member of this class. Although Springmoor is not the owner of the real property on which its home for the aged, sick and infirm is located, Springmoor does own the personal property for which it sought exemption pursuant to G.S. 105-275(32) and Springmoor uses that personal property "in the operation of [the] home." G.S. 105-275(32) (1995). The Commission here reviewed Springmoor's application for exemption accordingly and determined that Springmoor would be entitled to an exemption except that it "does not meet the requirements of subsection (v) of that statute . . ." because Springmoor is not "owned and operated by a Masonic organization or . . . religious body." No party assigns error to the Commission's determination in this regard.

Since Springmoor is a member of the class affected, we believe that Springmoor here has established a "genuine grievance" and "alleged such a personal stake in the outcome of the controversy . . ." that the necessary "concrete adverseness" can be assured. *Stanley*, 284 N.C. at 28, 199 S.E.2d at 650 (citations omitted). Consequently, we conclude that Springmoor is under no disability to challenge the constitutionality of G.S. 105-275(32). Having determined that appellant

Springmoor has standing to challenge the constitutionality of G.S. 105-275(32), we need not consider whether appellant Ammons and cross-appellant Wake County have standing to mount that identical challenge.

[2] We now address the dispositive issue of whether G.S. 105-275(32) is an unconstitutional establishment of religion in violation of either Article I, section 13 of the North Carolina Constitution or of the Establishment Clause of the First Amendment to the United States Constitution as applied to the States through the Fourteenth Amendment. *Everson v. Board of Ed. of Ewing*, 330 U.S. 1, 14-15, 91 L. Ed. 711, 722-23 (1947). We hold that G.S. 105-275(32)(v) is unconstitutional on its face as violative of both the federal and State Constitutions.

G.S. 105-275 is entitled "[p]roperty classified and excluded from the tax base." The constitutional challenge here is focused solely against G.S. 105-275(32), and more specifically against part (v) of subsection (32). G.S. 105-275(32) provides that the following property shall be exempted from taxation:

> Real and personal property owned by a home for the aged, sick, or infirm, that is exempt from tax under Article 4 of this Chapter, and used in the operation of that home. The term "home for the aged, sick, or infirm" means a self-contained community that (i) is designed for elderly residents; (ii) operates a skilled nursing facility, an intermediate care facility, or a home for the aged; (iii) includes residential dwelling units, recreational facilities, and service facilities; (iv) the charter of which provides that in the event of dissolution, its assets will revert or be conveyed to an entity organized exclusively for charitable, educational, scientific, or religious purposes, and which qualifies as an exempt organization under Section 501(c)(3) of the Internal Revenue Code of 1986; *(v) is owned, operated, and managed by one of the following entities:*
>
> *A. A congregation, parish, mission, synagogue, temple, or similar local unit of a church or religious body;*
>
> *B. A conference, association, division, presbytery, diocese, district, synod, or similar unit of a church or religious body;*
>
> *C. A Masonic organization whose property is excluded from taxation pursuant to G.S. 105-275(18); or*

D. A nonprofit corporation governed by a board of directors at least a majority of whose members elected for terms commencing on or before December 31, 1987, shall have been elected or confirmed by, and all of whose members elected for terms commencing after December 31, 1987, shall be selected by, one or more entities described in A., B., or C. of this subdivision, or organized for a religious purpose as defined in G.S. 105-278.3(d)(1); and

(vi) has an active program to generate funds through one or more sources, such as gifts, grants, trusts, bequests, endowment, or an annual giving program, to assist the home in serving persons who might not be able to reside at the home without financial assistance or subsidy.

G.S. 105-275(32) (emphasis added).

The First Amendment to the United States Constitution provides in pertinent part that "Congress shall make no law respecting an establishment of religion . . . ." U.S. CONST. amend. I. In *Heritage Village Church v. State*, 299 N.C. 399, 406, 263 S.E.2d 726, 730 (1980), our Supreme Court recognized that, although the language of our State constitution differs from that of the federal constitution, the North Carolina Constitution provides the same protection in Article I, section 13:

All persons have a natural and inalienable right to worship Almighty God according to the dictates of their own consciences, and no human authority shall, in any case whatever, control or interfere with the rights of conscience.

N.C. CONST. art. I, §13. This prohibition against the establishment of religion contained in both the federal and State constitutions provides at least the following limitation on governmental action:

Neither a state nor the Federal Government can set up a church. Neither can pass laws which aid one religion, aid all religions, or prefer one religion over another. Neither can force nor influence a person to go to or to remain away from church against his will or force him to profess a belief or disbelief in any religion. No person can be punished for entertaining or professing religious beliefs or disbeliefs, for church attendance or non-attendance. No tax in any amount, large or small, can be levied to support any religious activities or institutions, whatever they may be called, or whatever form they may adopt to teach or practice religion.

*Everson,* 330 U.S. at 15-16, 91 L. Ed. at 723; *see Heritage Village,* 299 N.C. at 406, 263 S.E.2d at 730.

At the heart of the Establishment Clause is the requirement that government maintain a position of secular neutrality toward religion such that government should not prefer one religion over another, or religion over non-religion. *E.g., Heritage Village,* 299 N.C. at 406-07, 263 S.E.2d at 730-31; *Epperson v. Arkansas,* 393 U.S. 97, 104, 21 L. Ed. 2d 228, 234 (1968).

> The Legislature oversteps the bounds of this separation when it enacts a regulatory scheme which, whether in purpose, substantive effect, or administrative procedure, tends to "control or interfere" with religious affairs, or to "discriminate" along religious lines, or to constitute a law "respecting" the establishment of religion. Stated simply, the constitutional mandate is one of secular neutrality toward religion.

*Heritage Village,* 299 N.C. at 406, 263 S.E.2d at 730. For a challenged statute "to pass muster under the strict test of Establishment Clause neutrality, it must pass the three-prong review . . ." first articulated by the United States Supreme Court in *Lemon v. Kurtzman,* 403 U.S. 602, 612-13, 29 L. Ed. 2d 745, 755 (1971). *Heritage Village,* 299 N.C. at 407, 263 S.E.2d at 731. "First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion . . . ; finally, the statute must not foster 'an excessive government entanglement with religion.' " *Lemon,* 403 U.S. at 612-13, 29 L. Ed. 2d at 755 (quoting *Walz v. Tax Commission,* 397 U.S. 664, 674, 25 L. Ed. 2d 697, 704 (1970)) (citation omitted).

Applying these criteria to the statutory provision before us, we conclude that G.S. 105-275(32)(v) violates the constitutional prohibition against the establishment of religion as found in both the federal and State constitutions.

In *Walz v. Tax Commission,* the United States Supreme Court upheld a New York law exempting from taxation certain properties used solely for religious worship. 397 U.S. 664, 674, 25 L. Ed. 2d 697, 704 (1970). The statute upheld in *Walz* addressed only the classification of property used solely for religious purposes. Unlike the statute before us here, however, the statute upheld in *Walz* did not "single[] out one particular church or religious group or even churches as such; rather, it . . . granted exemption to all houses of religious wor-

IN RE SPRINGMOOR, INC.

[125 N.C. App. 184 (1997)]

ship within a broad class of property owned by nonprofit, quasi-public corporations which include hospitals, libraries, playgrounds, scientific, professional, historical, and patriotic groups. *Walz*, 397 U.S. at 673, 25 L. Ed. 2d at 703.

Unlike *Walz*, the broad classification of property addressed by the statute in question here is "[r]eal and personal property owned by a home for the aged, sick, or infirm, . . . and used in the operation of that home." G.S. 105-275(32). This broad classification, standing alone without further qualification, would undeniably be a constitutionally permissible classification. The alleged constitutional infirmity here arises because G.S. 105-275(32) distinguishes, within this class of "home[s] for the aged, sick and infirm," between those that are religiously affiliated and those that perform essentially the same functions but lack any religious affiliation, and G.S. 105-275(32) grants exemption to the former while denying exemption to the latter.

As opposed to the broad and undivided classification drawn in *Walz*, the broader classification here is narrowly divided so as to prefer religion over non-religion. In this context, we can identify no legitimate secular objective sufficient to justify this preference. *Texas Monthly, Inc. v. Bullock*, 489 U.S. 1, 17, 103 L. Ed. 2d 1, 14 (1989). Moreover, the effect of G.S. 105-275(32)(v) is hardly one of benevolent and secular neutrality. *E.g., Heritage Village*, 299 N.C. at 409, 263 S.E.2d at 732. As the United States Supreme Court stated in *Texas Monthly*, when a statute granting a tax exemption "directs [the exemption] exclusively to religious organizations . . ." the statute generally provides an " 'unjustifiable award[] of assistance to religious organizations' and cannot but 'conve[y] a message of endorsement' to slighted members of the community." 489 U.S. at 15, 103 L. Ed. 2d at 13.

The final question we address is whether we must invalidate as unconstitutional all of G.S. 105-275(32) or whether we may constitutionally invalidate only subpart (v) which contains the impermissible religious preference. The issue is one of severability.

"The general proposition must be . . . that in a statute which contains invalid or unconstitutional provisions, that which is unaffected by these provisions, or which can stand without them, must remain. If the valid and invalid are capable of separation, only the latter may be disregarded." *Norfolk Southern R.R. v. Reid*, 187 N.C. 320, 325, 121 S.E. 534, 537 (1924) (citations omitted).

**IN RE SPRINGMOOR, INC.**

[125 N.C. App. 184 (1997)]

The question whether the rule of severability shall be applied to save partially unconstitutional legislation from being struck down *in toto* involves, fundamentally, a determination of and conformity with the intent of the legislative body which enacted the legislation. However, in determining what was (or must be deemed to have been) the intention of the legislature, certain tests of severability have been developed. Thus, it is held that if after eliminating the invalid portions, the remaining provisions are operative and sufficient to accomplish their proper purpose, it does not necessarily follow that the whole act is void; and effect may be given to the remaining portions. . . .

*State v. Fredell,* 283 N.C. 242, 245, 195 S.E.2d 300, 302 (1973) (citation omitted).

Applying these principles here, we conclude that only subpart (v) is unconstitutional and accordingly invalid. The remainder of G.S. 105-275(32) may stand independent of the unconstitutional subpart (v). In reaching this conclusion, we believe the context in which G.S. 105-275(32) was enacted to be particularly significant.

The General Assembly enacted G.S. 105-275(32) "after homes set up as communities to care for the elderly or infirm lost their status as tax-exempt charitable institutions . . . ." *In re Appeal of Barbour,* 112 N.C. App. 368, 378, 436 S.E.2d 169, 176 (1993). By enacting G.S. 105-275(32), the General Assembly clearly intended "to promote communities for the elderly without giving a tax windfall to all residential property owners." *Id.* Therefore, we hold that, after eliminating the invalid part (v) of 105-275(32), the "remaining provisions [of G.S. 105-275(32)] are operative and sufficient to accomplish their proper purpose . . ." of promoting communities for the elderly. This holding, applying the doctrine of severability here, best accords with the purpose of the statute and the clear legislative intent in enacting the statute. We need not address appellants' remaining assignments of error.

Reversed.

Judges MARTIN, JOHN C., and SMITH concur.