MICHAEL C. MUNGER, BARBARA HOWE, and MARK WHITELY CARES, Plaintiffs v. STATE OF NORTH CAROLINA; JAMES T. FAIN III, Secretary of the North Carolina Department of Commerce, in his official capacity; REGINALD HINTON, Acting Secretary of the North Carolina Department of Revenue, in his official capacity; DAVID T. McCOY, State Budget Officer for the Office of State Budget and Management, in his official capacity; MICHAEL F. EASLEY, Governor of the State of North Carolina, in his official capacity; GOOGLE INC.; and MADRAS INTEGRATION, LLC, Defendants

No. COA09-375

(Filed 16 February 2010)

**Taxation— business incentives—sales and use exemption—discrimination claim—standing**

The trial court correctly concluded that plaintiffs lacked standing to assert discrimination-based challenges to economic incentive legislation exempting eligible internet data centers from sales and use taxation and correctly dismissed those claims pursuant to N.C.G.S. § 1A-1, Rule 12(b)(1). A challenge involving an indistinguishable class (all sales and use taxpayers) was disposed of in *Blinson v. State*, 186 N.C. App. 328.

Appeal by plaintiffs from order entered 14 November 2008 by Judge Paul C. Ridgeway in Wake County Superior Court. Heard in the Court of Appeals 26 October 2009.

*North Carolina Institution for Constitutional Law, by Robert F. Orr and Jeanette K. Doran, for Plaintiffs.*

*Womble Carlyle Sandridge & Rice, PLLC, by Burley B. Mitchell, Jr., Pressly M. Millen, and Sean Andrussier, for Defendants Google, Inc., and Madras Integration, LLC.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Norma S. Harrell and Special Deputy Attorney General I. Faison Hicks, for Defendants State of North Carolina, James T. Fain, III, Reginald Hinton, David T. McCoy, and Governor Michael F. Easley.*

ERVIN, Judge.

The present appeal stems from another in a series of challenges to economic incentive legislation enacted by the General Assembly as violative of various provisions of the North Carolina Constitution. After careful consideration of the record in light of the applicable law, we conclude that Plaintiffs lack standing to assert the only claims that have been brought forward for our consideration on appeal and that the trial court correctly dismissed those claims pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(1).

### I.  Factual Background

#### A.  Substantive Facts

According to the allegations of the amended complaint, a series of meetings involving, at different times, representatives of Google; representatives of Burke, Caldwell, and McDowell Counties; various State officials, including employees of the Department of Commerce and the Department of Revenue; representatives of the City of Lenoir; and representatives of Duke Energy Carolinas, were held relating to the proposed project beginning in December, 2005. On or about 8 February 2006, the Caldwell County Commission and the Lenoir City Council made "an enhanced grant proposal" to Google relating to the construction of a proposed data center.

On 24 May 2006, a bill was introduced in the North Carolina House of Representatives that would, if enacted, have exempted internet data centers from certain sales and use taxes. On 25 May 2006, a substantially similar bill was introduced in the North Carolina Senate. On 10 July 2006, the Governor signed into law 2006 N.C. Sess. L. c. 66, which was entitled An Act to Modify the Current Operations and Capital Appropriations Act of 2005 (2006 Current Operations Appropriations Act). Among the components of the 2006 Current Operations Appropriations Act were certain amendments to Chapter 105 of the General Statues, which had the effect of exempting entities defined as "eligible internet data centers" from certain sales and use taxes. The General Assembly defined an "eligible Internet data center" in that legislation as:

MUNGER v. STATE OF N.C.

[202 N.C. App. 404 (2010)]

A facility that satisfies each of the following conditions:

a. The facility is used primarily or is to be used primarily by a business engaged in Internet service providers and Web search portals industry 51811, as defined by NAICS.

b. The facility is comprised of a structure or series of structures located or to be located on a single parcel of land or on contiguous parcels of land that are commonly owned or owned by affiliation with the operator of that facility.

c. The facility is located or to be located in a county that was designated, at the time of application for the written determination required under sub-subdivision d. of this subdivision, either an enterprise tier one, two, or three area or a development tier one or two area pursuant to [N. C. Gen. Stat. §] 105-129.3 or [N. C. Gen. Stat. §] 143B-437.08, regardless of any subsequent change in county enterprise or development tier status.

d. The Secretary of Commerce has made a written determination that at least two hundred fifty million dollars ($250,000,000) in private funds has been or will be invested in real property or eligible business property, or a combination of both, at the facility within five years after the commencement of construction of the facility.

N.C. Gen. Stat. § 105-164.3(8e). Furthermore, the 2006 Current Operations Appropriations Act amended N.C. Gen. Stat. § 105-164.13 by inserting new language providing that "[t]he sale at retail and the use, storage, or consumption in this State of the following tangible personal property and services are specifically exempted from the tax imposed by this Article: . . ."

(55) Sales of electricity for use at an eligible Internet data center and eligible business property to be located and used at an eligible Internet data center. As used in this subdivision, "eligible business property" is property that is capitalized for tax purposes under the Code and is used either:

a. For the provision of Internet service or Web search portal services as contemplated by [N.C. Gen. Stat. §] 105-164.3(8e)a., including equipment cooling systems for managing the performance of the property.

b. For the generation, transformation, transmission, distribution, or management of electricity, including exterior

substations and other business personal property used for these purposes.

   c. To provide related computer engineering or computer science research.

N.C. Gen. Stat. § 105-164.13(55). The General Assembly attempted to ensure that the level of investment contemplated by N.C. Gen. Stat. § 105-164.3(8e)d was actually made at the required location by mandating, in certain circumstances that are not relevant to this case, the forfeiture of the exemption and the repayment of avoided taxes with interest. N.C. Gen. Stat. § 105-164.13(55). Although Plaintiffs have alleged that these sales and use tax exemptions for eligible internet data centers were enacted for the specific purpose of providing incentives to facilitate the construction and operation of an internet data center in Caldwell County by Google, Inc., none of the statutory language in question makes any reference to Google or any Google affiliate and the same tax treatment is available to any other entity that meets the criteria specified in N.C. Gen. Stat. § 105-164.3(8e).[1]

### B.  Procedural History

On 25 July 2007, Plaintiffs Michael Munger, Barbara Howe and Mark Whitley Cares, acting in their capacities as individuals who pay state income taxes and state sales and use taxes, filed a complaint against James T. Fain, III, in his official capacity as Secretary of the North Carolina Department of Commerce; Reginald Hinton, in his official capacity as Acting Secretary of the North Carolina Department of Revenue; David T. McCoy, in his official capacity as State Budget Officer; Michael F. Easley, in his official capacity as Governor of the State of North Carolina (the State Defendants; Google; and Madras Integration, LLC., which is a subsidiary of Google (the Google Defendants). In their complaint, Plaintiffs sought a declaration that the various incentives provided for eligible internet data centers violated the exclusive emoluments, public purpose, fair and equitable taxation, and uniformity of taxation provisions of the North Carolina Constitution, and requested that the State Defendants be enjoined from providing any incentives to the Google Defendants and recoup

---

1. The complaint also contains allegations relating to the constitutionality of assistance provided to Google from the Job Development Investment Grant Program. However, since Plaintiffs have not brought their challenge to any Job Development Investment Grant that may be made to Google or its affiliates forward on appeal and since the parties' briefs suggest that no such grant may have actually been made, we will not discuss the Job Development Investment Grant Program further in this opinion.

any incentive amounts that had already been provided to the Google Defendants. On 16 August 2007, Plaintiffs amended their complaint as a matter of right in order to add a claim that the incentives provided for eligible internet data centers violated the law of the land provision of the North Carolina Constitution.

On 16 October 2007, the Google Defendants filed a motion to dismiss Plaintiffs' complaint pursuant to N.C. Gen. Stat. § 1A-1, Rules 12(b)(1) and 12(b)(6), on the grounds that Plaintiffs lacked standing to advance any of the claims asserted in their amended complaint and that Plaintiffs had failed to state a claim for which relief could be granted. On 18 October 2007, the State Defendants filed a motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rules 12(b)(1) and 12(b)(6), on the grounds that, even if the factual allegations of Plaintiffs' amended complaint were true, their claims would fail as a matter of law and that they had failed to allege sufficient facts to demonstrate that they had standing to bring the claims asserted in their amended complaint.

On 14 November 2008, the trial court entered an Order and Memorandum of Decision. The trial court dismissed Plaintiffs' Claims for Relief 4, 5, 6, 9 and 10, which alleged violations of the provisions of N.C. Const. art. V, §§ 2(1) and (7) requiring that the taxation and appropriation powers be exercised for "public purposes only," pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) on the grounds that "the challenged governmental activity in this case" was for a public purpose and that "the incentives offered to Google and those similarly situated, as a matter of law, benefit the public generally." The trial court dismissed Plaintiffs' Claims for Relief 1, 2 and 3, which alleged violations of the exclusive emoluments clause contained in N.C. Const. art. I, § 32, pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) on the grounds that, since the incentives in question have "been determined to 'promote the public benefit' under the Public Purpose Clause, [they] necessarily [are] not an exclusive emolument." (emphasis in the original) (citing *Blinson v. State*, 186 N.C. App. 328, 342, 651 S.E.2d 268, 277-78 (2007), *appeal dismissed and disc. review denied*, 362 N.C. 355, 661 S.E.2d 241 (2008) (citing *Peacock v. Shinn*, 139 N.C. App. 487, 496, 533 S.E.2d 842, 848 (2000), *disc. review denied and app. dismissed*, 353 N.C. 267, 546 S.E.2d 110 (2000)). The trial court dismissed Claims for Relief 7, 8 and 11, which rest upon the "just and equitable" taxation provision of N.C. Const. art. V, § 2(1); the uniformity of taxation provision of N.C. Const. art. V, § 2(2); and the "law of the land" clause of N.C. Const. art. I, § 19,

for lack of standing pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(1). As a result of the fact that the 12th and final claim for relief set out in Plaintiffs' amended complaint "merely seeks the remedy of a declaratory judgment" and "[b]ecause each of the bases for the judgment that Plaintiffs seek have been considered and dismissed above," the trial court also dismissed Claim for Relief 12, which was the only remaining claim asserted in the amended complaint. On 12 December 2008, Plaintiffs noted an appeal from the trial court's order to this Court.

## II. Legal Analysis

On appeal, Plaintiffs contend that they have standing in their capacity as taxpayers to challenge the sales and use tax exemptions granted to "eligible internet data centers" in the 2006 Current Operations Appropriations Act as violative of the uniformity in taxation provisions of N.C. Const. art. V, §§ 2(1) and 2(2) and the "law of the land" clause of N.C. Const. art. I, § 19.[2] After careful consideration, we conclude that Plaintiffs lack standing to assert the claims that they have brought forward on appeal from the trial court's order.

### A. Standard of Review

The rationale of [the standing rule] is that only one with a genuine grievance, one personally injured by a statute, can be trusted to battle the issue. The 'gist of the question of standing' is whether the party seeking relief has alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.

*Mangum v. Raleigh Board of Adjustment*, 362 N.C. 640, 642, 669 S.E.2d 279, 282 (quoting *Stanley v. Dep't of Conservation & Dev.*, 284 N.C. 15, 28, 199 S.E.2d 641, 650 (1973) (internal quotations omitted). As the party attempting to invoke the jurisdiction of the General Court of Justice, Plaintiffs have the burden of establishing standing. *Coker v. DaimlerChrysler Corp.*, 172 N.C. App. 386, 391, 617 S.E.2d 306, 310 (2005), *aff'd per curiam*, 360 N.C. 398, 627 S.E.2d 461 (2006). "If a *party* does not have standing to bring a claim, a court has no subject matter jurisdiction to hear the claim." *Estate of Apple v. Commercial Courier Express, Inc.*, 168 N.C. App. 175, 177, 607

---

2. Plaintiffs do not challenge the trial court's decision to dismiss Claims for Relief 1, 2, 3, 4, 5, 6, 9, 10, and 12 as asserted in their amended complaint on appeal.

S.E.2d 14, 16, *disc. review denied,* 359 N.C. 633, 613 S.E.2d 688 (2005). For that reason, the absence of standing is appropriately addressed by a dismissal motion lodged pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(1). *Peninsula Prop. Owners Ass'n v. Crescent Res., LLC,* 171 N.C. App. 89, 93, 614 S.E.2d 351, 354, *appeal dismissed and disc. review denied,* 360 N.C. 177, 626 S.E.2d 648 (2005).

"When reviewing a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), a trial court may consider and weigh matters outside the pleadings." *DOT v. Blue,* 147 N.C. App. 596, 603, 556 S.E.2d 609, 617 (2001), *disc. review denied and cert. denied,* 356 N.C. 434, 572 S.E.2d 428-29 (2002) (citing *Smith v. Privette,* 128 N.C. App. 490, 493, 495 S.E.2d 395, 397 (1998)). "However, if the trial court confines its evaluation to the pleadings, the court must accept as true the plaintiff's allegations and construe them in the light most favorable to the plaintiff." *Blue,* 147 N.C. App. at 603, 556 S.E.2d at 617 (citing *Privette,* 128 N.C. App. at 493, 495 S.E.2d at 397). "We note that this Court's review of an order granting a Rule 12(b)(1) motion to dismiss is *de novo,* 'except to the extent the trial court resolves issues of fact and those findings are binding on the appellate court if supported by competent evidence in the record.' " *Id.* (citing *Privette,* 128 N.C. App. at 493, 495 S.E.2d at 397); *see also Fuller v. Easley,* 145 N.C. App. 391, 395, 553 S.E.2d 43, 46 (2001) (stating that a trial court's decision to dismiss a case pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(1) for lack of standing is reviewed on a *de novo* basis). Since the trial court did not resolve issues of fact in determining that the Plaintiffs lacked standing to assert Claims for Relief 7, 8, and 11 as alleged in the amended complaint, we review the trial court's decision to grant Defendant's motion to dismiss Plaintiffs' claims pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(1) using a *de novo* standard of review.

### B.  General Principles of Taxpayer Standing

The Supreme Court has stated that, "[a]lthough we caution[]" against the hindrance of the North Carolina government "by lawsuits from taxpayers who merely disagree with the policy decisions of government officials, we [have] concluded that 'the right of a citizen and taxpayer to maintain an action in the courts to restrain the unlawful use of public funds to his injury cannot be denied.' " *Goldston v. State,* 361 N.C. 26, 33, 637 S.E.2d 876, 881 (2006) (quoting *Teer v. Jordan,* 232 N.C. 48, 59 S.E.2d 359 (1950)). For that reason, "a taxpayer has standing to bring an action against appropriate government officials for the alleged misuse or misappropriation of public funds." *Goldston,* 361 N.C. at 33, 637 S.E.2d at 881. "A taxpayer injuriously

affected by a statute may generally attack its validity[;] [t]hus, he may attack a statute which . . . exempts persons or property from taxation, or imposes on him in its enforcement an additional financial burden, however slight." *In re Appeal of Barbour*, 112 N.C. App. 368, 373, 436 S.E.2d 169, 173 (1993) (quoting *Stanley v. Department of Conservation and Dev.*, 284 N.C. 15, 29, 199 S.E.2d 641, 651 (1973)). On the other hand, "[a] taxpayer, as such, does not have standing to attack the constitutionality of any and all legislation." *Nicholson v. State Education Assistance Authority*, 275 N.C. 439, 447, 168 S.E.2d 401, 406 (1969) (citing *Wynn v. Trustees*, 255 N.C. 594, 122 S.E.2d 404 (1961); *Carringer v. Alverson*, 254 N.C. 204, 118 S.E.2d 408 (1961); *Fox v. Commissioners of Durham*, 244 N.C. 497, 94 S.E.2d 482 (1956); *Turner v. Reidsville*, 224 N.C. 42, 29 S.E.2d 211 (1944)). "If a person is attacking the statute on the basis that the statute is discriminatory, however, the person 'has no standing for that purpose unless he belongs to the class which is prejudiced by the statute.'" *Barbour*, 112 N.C. App. at 373, 436 S.E.2d at 173 (quoting *In re Appeal of Martin*, 286 N.C. 66, 75, 209 S.E.2d 766, 773 (1974) (citation omitted)) (citing *State v. Vehaun*, 34 N.C. App. 700, 703-04, 239 S.E.2d 705, 708 (1977), *cert. denied* 294 N.C. 445, 241 S.E.2d 846 (1978); *Roberts v. Durham County Hosp. Corp.*, 56 N.C. App. 533, 538-39, 289 S.E.2d 875, 878, *motion to dismiss denied, disc. review allowed*, 306 N.C. 387, 294 S.E.2d 205 (1982), *aff'd per curiam*, 307 N.C. 465, 298 S.E.2d 384 (1983)); *see also Nicholson*, 275 N.C. at 448, 168 S.E.2d at 407 (citations omitted) (stating that "[t]he constitutionality of a provision of a statute may not [be challenged in the absence of proof] that the carrying out of the provision he challenges will cause him to sustain, personally, a direct and irreparable injury, apart from his general interest as a citizen in good government in accordance with the provisions of the constitution"). Thus, the decisions of the Supreme Court and of this Court with respect to "taxpayer standing" differentiate between (1) actions challenging the constitutional validity of a statute on the grounds that it allows public funds to be dispersed for reasons other than a "public purpose," in which a taxpayer generally has standing, and (2) actions challenging the constitutional validity of a statute on the grounds that the statute discriminates among classes of persons, in which a taxpayer must show that he belongs to a class that receives prejudicial treatment.

## C. Nature of Plaintiffs' Claims

The present appeal centers on whether Plaintiffs, in their capacity as individuals who pay North Carolina income and sales and use

taxes, have standing to challenge the sales and use tax exemptions for eligible internet data centers on the grounds that they (1) violate N.C. Const. art. V, § 2(1), which states that "[t]he power of taxation shall be exercised in a just and equitable manner"; (2) violate N.C. Const. art. V, § 2(2), the uniformity of taxation clause, which states that "[n]o class of property shall be taxed except by uniform rule, and every classification shall be made by general law uniformly applicable in every county, city and town, and other unit of local government"; and (3) violate the "law of the land" clause of N.C. Const. art. I, § 19, which provides that "[n]o person shall be . . . deprived of his life, liberty, or property, but by the law of the land" or "denied the equal protection of the laws . . . ."

In their complaint, Plaintiffs attempted to establish their standing to assert Claims for Relief 7, 8 and 11 on the basis of the following allegations:

2. This action arises from legislation (the "Google legislation") adopted by the North Carolina General Assembly on July 6, 2006 providing tax benefits and exemptions from retail sales and use tax totaling approximately tens of millions of dollars to Google with respect to its building and operating an internet data center in North Carolina. N.C. Gen. Stat. § 105-164.3(8e), 164.13 (55). The Google legislation discriminates among taxpayers, creates a taxing scheme which is not uniform, which discriminates among taxpayers, which is not for a public purpose only, which establishes an exclusive emolument not in exchange for public service, is contrary to the Law of the Land, and constitutes an unjust and inequitable exercise of the power of taxation—thereby violating various provisions of the North Carolina Constitution. . . . .

## PARTIES

### (Plaintiffs)

. . . .

4. Plaintiff Michael C. Munger is a citizen and resident of the State of North Carolina, and is a taxpayer to the government of the State of North Carolina. Plaintiff Munger pays various types of taxes to the government of the State of North Carolina, including state income taxes and state sales taxes on items purchased.

5. Plaintiff Barbara Howe is a citizen and resident of the State of North Carolina, and is a taxpayer to the government of the State of North Carolina. Plaintiff Howe pays various types of taxes to the government of the State of North Carolina, including state income taxes and state sales taxes on items purchased.

6. Plaintiff Mark Whiteley Cares is a citizen and resident of the State of North Carolina, and is a taxpayer to the government of the State of North Carolina. Plaintiff Howe[3] pays various types of taxes to the government of the State of North Carolina, including state income taxes and state sales taxes on items purchased.

. . . .

55. Google's operation of the facility in question in Lenoir, Caldwell County, North Carolina will be a business operation pursuant to Google's overwhelmingly predominant intention and objective of maximizing Google's profitability. Those profit-making intentions and objectives of Google are similar to the profit-making intentions and objectives of numerous other businesses in North Carolina. Google's operation of the facility in question in Lenoir, Caldwell County, North Carolina will not be for the provision of public social services or public infrastructure or public amenities. Rather, the Google facility in question is a facility to enable Google to satisfy customers of Google.

. . . .

57. Plaintiffs are not eligible for and have not received any tax forbearance or subsidies or grants similar to the tax benefits for Google.

58. Through the present time, defendant State does not plan to provide any person or entity, other than Google, tax exemptions, grants, and subsidies pursuant to the Google legislation.

59. Plaintiffs are, have been, and/or will be directly and/or sufficiently injured by the tax benefits for Google in that those benefits unlawfully deplete the funds of the State to which

3. Presumably, the reference to Plaintiff Howe is a typographical error and should be understood as a reference to Plaintiff Cares.

MUNGER v. STATE OF N.C.

[202 N.C. App. 404 (2010)]

the Plaintiffs contribute through their tax payments, thereby diminishing the funds available for lawful purposes and imposing disproportionate, additional, and increased financial burdens on the Plaintiff taxpayers.

. . . .

## Count 7—N.C. Constitution

## (Violations of the "Taxation Must Be Fair and Equitable Clause")

. . . .

76. The tax benefits for Google, and the purported laws, as applied for Google and/or on their face, constitute an unfair, unjust, inequitable, arbitrary, and capricious exercise of the power of taxation, and accordingly violate Article V, Section 2(1) of the North Carolina Constitution, which states, "The power of taxation shall be exercised in a just and equitable manner. . . ."

## Count 8—N.C. Constitution

## (Google Legislation Violates the Uniformity of Taxation Clause)

. . . .

78. The Google legislation and the tax benefits for Google and the purported laws violate Article V, Section 2(2) of the North Carolina Constitution in that they violate the requirement of uniformity of taxation within classifications and were not enacted by general law nor are they uniformly applicable to all businesses in every county, city and town and other unit of local government, and in that the legislation, purported laws, and tax benefits were specifically enacted for the benefit of Google. The Google legislation and the tax benefits for Google and the purported laws also violate Article V, Section 2(2) of the North Carolina Constitution in that they treat Google in a massively preferential way relative to other similarly situated taxpayers, and do so without a rational basis[.]

. . . .

## Count 11—N.C. Constitution

## (Violations of the "Law of the Land" Clause)

. . . .

84. References herein to the "Eligible" refer to anyone eligible for the tax breaks and exemptions contemplated by the Google legislation.

85. Providing Google with the tax benefits for Google is state governmental favoritism for Google, relative to other persons and entities (including plaintiffs) who contribute mightily to the economic well-being of this State but who do not receive such benefits and do not qualify to be among the Eligible.

86. Providing any of the Eligible with the tax breaks and exemptions contemplated by the Google legislation is unearned and undeserved state governmental favoritism for Google, relative to other persons and entities (including plaintiffs) who contribute mightily to the economic well-being of this State but who do not receive such tax breaks and exemptions and do not qualify to be among the Eligible.

87. The favoritism referred to in the preceding two paragraphs accrues only to Google and to those who are the Eligible by meeting the arbitrary criteria of the Google legislation.

88. The favoritism referred to in the preceding three paragraphs does not promote, is not sufficiently causally related to promoting, and in fact detracts from this State's overall economic well-being, all the while directly promoting the well-being of Google.

89. The tax benefits for Google and the purported laws, as applied for Google and/or on their face, constitute unreasonable and arbitrary state action, and are state action not sufficiently related to the accomplishment of sufficiently compelling state objectives.

90. As applied for Google and/or on their face, the tax benefits for Google and the purported laws impose burdens and costs which significantly outweigh the public good likely to result from such tax benefits and purported laws.

91. Accordingly, the tax benefits for Google and the purported laws, as applied for Google and/or on their face, violate Article I, Section 19 of the North Carolina Constitution , i.e. violate the Law of the Land Clause.

. . . .

103. Plaintiffs have sufficient interest and stake in the subject matter of this action. An actual controversy, and adverseness of interest, exist between plaintiff[s] and defendants with respect to the subject matter of this action. The subject matter of this action does not present mere abstract questions, but presents a concrete and real conflict between adverse interests.

On appeal, Plaintiffs contend that they have standing sufficient to support maintenance of the present action for three reasons. First, they argue that Claims for Relief 7, 8 and 11 are not subject to the standing requirement applicable to discrimination-based challenges to taxation statutes. In essence, Plaintiffs argue that, "where a taxpayer is challenging a tax exemption, rather than a tax levy, he need not be among the class eligible for the specific tax exemption in question in order to challenge the constitutionality of the exemption." Secondly, Plaintiffs argue that, despite Defendants' contentions to the contrary, they have not "raise[]d a true discrimination claim" so that "the standing calculus for such claims is inapplicable." Finally, Plaintiffs argue that, even if the claims in question are discrimination-based and subject to heightened standing requirements, they satisfy the applicable standing requirement by virtue of their status as persons who pay the relevant taxes. After carefully reviewing the authorities upon which Plaintiffs rely, we do not find any of their arguments persuasive.

## D.  Plaintiff's Standing to Assert Constitutional Claims

### 1.  Plaintiffs are not Eligible to Assert Traditional Taxpayer Standing

In arguing that traditional taxpayer standing rules apply to the claims that they have brought before us on appeal, Plaintiffs note the Supreme Court's statement in *Goldston* that "[o]ur cases demonstrate that a taxpayer has standing to bring an action against appropriate government officials for the alleged misuse or misappropriation of public funds," *Goldston*, 361 N.C. at 33, 637 S.E.2d at 881, and argue that, "[w]hile *Goldston* did not specifically articulate that taxpayer standing applies equally to the unconstitutional failure to collect revenue, the rationale of *Goldston* is just as compelling to the latter situation." In essence, Plaintiffs argue that, since "[t]he justification of *Goldston* was simply that the misuse or misappropriation of public money results in a loss of funds available for legitimate public purposes" and since "[t]he same result follows in the government's fail-

ure to levy and collect taxes," "both situations warrant taxpayer standing."[4]

The fundamental difficulty with this aspect of Plaintiffs' argument is that it treats *Goldston* as having worked a fundamental change in North Carolina standing jurisprudence. A careful reading of *Goldston* provides no indication that the Supreme Court intended such a result. On the contrary, by stating that "our cases demonstrate that a taxpayer has standing to bring an action against appropriate government officials for the alleged misuse or misappropriation of public funds," *Goldston*, 361 N.C. at 33, 637 S.E.2d at 881, the Supreme Court clearly indicated that it viewed its standing decision in that case as nothing more than a restatement of established law. However, established North Carolina law also requires that a person seeking to challenge "the validity of a discriminatory statute . . . belong[] to the class which is prejudiced by the statute." *Appeal of Martin*, 286 N.C. at 75, 209 S.E.2d at 773; *see also Nicholson*, 275 N.C. at 447, 168 S.E.2d at 407. Nothing in *Goldston* suggests that the Supreme Court had any intention of calling into question the decisions which require membership in the class adversely affected by an allegedly discriminatory tax statute as a precondition for mounting a challenge to its constitutionality. Perhaps for that reason, a prior panel of this Court, in a post-*Goldston* decision, did not treat *Goldston* as having altered the test to be applied in determining whether a taxpayer had standing to mount a discrimination-based challenge to a tax statute. *Blinson*, 186 N.C. App. at 333-35, 651 S.E.2d at 273-74. As a result, we conclude that the mere fact that Plaintiffs pay North Carolina income and sales and use taxes, without more, does not give them standing to challenge the sales and use tax exemption afforded to eligible internet data centers.

## 2.  Plaintiffs' Claims Are Discrimination-Based

Next, Plaintiffs contend that the trial court erroneously "concluded that Plaintiffs lacked standing to pursue their fair tax claims

---

4. According to Plaintiffs, the decision in *Stanley*, 284 N.C. at 15, 199 S.E.2d at 641, is "eerily similar to the instant case." However, the issue addressed in *Stanley*, which involved whether "the creation of the Halifax, Northampton, and Jones County Authorities for the purpose of financing pollution abatement and control facilities or industrial facilities for private industry by the issuance of tax-exempt revenue bonds is . . . for a public purpose," *Stanley*, 284 N.C. at 41, 199 S.E.2d at 658, is very different than the issue Plaintiffs seek to raise in this case, which revolves around the extent to which the General Assembly acted unconstitutionally by exempting eligible internet data centers, but not other taxpayers, from certain sales and use taxes. For that reason, we cannot agree with Plaintiffs' contention that *Stanley* is "eerily similar" to the present case.

because they were not in the class of taxpayers discriminated against by" the sales and use tax exemptions for eligible internet data centers. In essence, Plaintiffs contend that the trial court reached the erroneous conclusion that their claims were discrimination-based because of a mistaken reading of this Court's decision in *Barbour*. According to Plaintiffs, we concluded in *Barbour* "that the plaintiff in that case had standing for uniformity claims which were challenges to the existence of a tax exemption rather than those claims which challenged the discriminatory features of the exemption." Instead of alleging "that the qualifying criteria operate in a discriminatory manner," Plaintiffs claim to "have alleged that the *creation* of a special tax exemption—without regard to the qualifying criteria—is unconstitutional" (emphasis in the original). Based upon that analysis, Plaintiffs contend that they have not asserted a discrimination-based claim.

The statute at issue in *Barbour* exempted from taxation "[r]eal and personal property owned by a home for the aged, sick, or infirm, that is exempt from tax under Article 4 of [Chapter 105], and is used in the operation of that home." N.C. Gen. Stat. § 105-275(32). According to N.C. Gen. Stat. § 105-275(32), the "home" had to be "owned, operated, and managed" by a religious body, a Masonic organization, or a non-profit corporation controlled by a board of directors, a majority of whom were selected by a religious body or Masonic organization. In discussing the standing issue in *Barbour*, we first noted the plaintiff's allegation "that N.C. [Gen. Stat.] § 105-275(32) discriminates against the class of individual residential property owners who own their own property for private personal residences and are not exempt under the statute from taxation." Since the plaintiff "is a member of this class, and the exemption of property under this statute affects him as a residential property owner subject to taxation," we found that the plaintiff had "standing to challenge the statute on this basis." *Barbour*, 112 N.C. App. at 373, 436 S.E.2d at 173. In addition, the plaintiff alleged "that N.C. [Gen. Stat.] § 105-275 (32) discriminates against the class of homes for the aged, sick, or infirm, which are non-religious and non-Masonic." *Id.* Since the plaintiff was "not a member of this classification" and since "taxpayers of this State who are members of this class are under no disability to challenge this statute as discriminating against them," we held that the plaintiff "lack[ed] standing to challenge the statute on the basis that it discriminates against non-religious, non-Masonic homes for the aged, sick, or infirm." *Barbour*, 112 N.C. App. at 373-74, 436 S.E.2d at 173-74.

After carefully studying the discussion of the standing issue in *Barbour*, we are unable to find any support for the distinction upon which Plaintiffs rely in this case. *Barbour* explicitly describes both of the theories upon which the plaintiff in that case claimed to have standing to challenge N.C. Gen. Stat. § 105-275(32) as resting upon assertions that classes of taxpayers were being discriminated against. In addition, both theories under which the plaintiff asserted the right to challenge the constitutionality of N.C. Gen. Stat. § 105-275(32) involved an argument that it was unconstitutional to exempt homes for the aged owned, operated, or managed by religious or Masonic bodies from taxation while denying the same exemption to private homeowners or homes for the aged that were owned, operated, or managed by non-religious or non-Masonic bodies. In fact, this Court has cited *Barbour* as authority for the traditional requirement that, "in order to establish standing to challenge a statute under the Uniformity of Taxation Clauses, plaintiffs must demonstrate that they 'belong[] to the class which is prejudiced by the statute.' " *Blinson*, 186 N.C. App. at 335, 651 S.E.2d at 274 (quoting *Barbour*, 112 N.C. App. at 373, 436 S.E.2d at 173, quoting *Appeal of Martin*, 286 N.C. App. at 75, 209 S.E.2d at 773)). As a result, we are unable to find any support for a distinction between challenges to the existence of an exemption and challenges to the "qualifying criteria" associated with an exemption in our *Barbour* opinion.

A careful reading of the three claims that Plaintiffs have brought forward on appeal indicates that each of them is, as the trial court concluded, discrimination-based. In their complaint, Plaintiffs allege that the relevant statutory provisions "discriminate[] among taxpayers [and] create[] a taxing scheme which is not uniform, which discriminates among taxpayers." In Claim for Relief 7, Plaintiffs allege that the sales and use tax exemption for eligible internet data centers is "inequitable" and "unfair." In Claim for Relief 8, Plaintiffs allege that the sales and use tax exemptions "violate the requirement of uniformity of taxation within classifications" "in that they treat Google in a massively preferential way relative to other similarly situated taxpayers, and do so without a rational basis[.]" Finally in Claim for Relief 11, Plaintiffs allege that Google has received "unearned and undeserved state government favoritism" in the form of "tax breaks and exemptions" while other equally-deserving persons, such as Plaintiffs, have not "receive[d] such tax breaks and exemptions."[5] At

---

5. The claim that the Plaintiffs asserted in their amended complaint in reliance upon N.C. Const. art. I, § 19, appears to rest on that portion of the relevant constitutional provision that prohibits denial of the "equal protection of the laws." However, in

bottom, the crux of each of Plaintiffs' claims is that eligible internet data centers have received more favorable tax treatment than Plaintiffs and other similarly-situated persons, which makes their claims quintessentially discrimination-based. As a result, we conclude that the trial court correctly concluded that Plaintiffs had to demonstrate that they " 'belong[ed] to the class which is prejudiced by the statute,' " *Barbour*, 112 N.C. App. at 373, 436 S.E.2d at 173, as a prerequisite for maintaining a constitutional challenge to the sales and use tax exemption for eligible internet data centers.

### 3. Plaintiffs do not Belong to the Class Prejudiced by the Challenged Statute

Finally, Plaintiffs contend that, even if they must demonstrate membership in the class harmed by the challenged statute as a precondition for launching a discrimination-based attack on its constitutionality, the trial court erred by "view[ing] the 'class' to which plaintiffs must belong as the class attempting to qualify for the exemption rather than the class subject to the tax itself." According to Plaintiffs, "a plaintiff must be in the class of taxpayers who pay the tax exempted by the challenged tax exemption" and "need not be discriminated against by the criteria for the exemption itself" in order to challenge an exemption from the sales and use tax. In reaching this conclusion, Plaintiffs rely on this Court's decision in *Barbour* to grant the plaintiff standing to challenge an exemption from county property taxes granted to homes for the aged owned, operated, or managed by religious or Masonic bodies based on his status "as a residential property owner subject to taxation." *Barbour*, 112 N.C. App. at 373, 436 S.E.2d at 173. According to Plaintiffs, they "do not seek to vindicate the rights of other companies which cannot qualify for the tax exemptions" and instead "seek to vindicate their own personal rights–the right to have taxes levied in a uniform manner and to have those tax[] revenues available to fund lawful government purposes."

As we have already noted, our opinion in *Barbour* does not make any explicit distinction between challenges to the existence of an exemption and challenges to the "qualifying criteria" associated with

the portion of their brief addressing their substantive claims, Plaintiffs appear to rely on that portion of Article I, Section 19, that equates to "substantive due process." We do not, however, believe that the exact portion of Article I, Section 19, upon which Plaintiffs' claim relies makes any difference in our standing analysis, since it is clear from an analysis of the substantive argument advanced in Plaintiffs' brief that the crux of their position remains that "[t]here is no fundamental difference between Google and any other taxpayer and yet the Google legislation, by its effect, singles out Google for preferential tax treatment" and is "repugnant to the administration of justice."

an exemption. For that reason, we conclude that the fundamental premise upon which Plaintiffs' standing argument rests lacks support in the language of our *Barbour* opinion. Thus, we must determine whether Plaintiffs' status as individuals who pay North Carolina sales and use taxes makes them members of a " 'class which is prejudiced by the statute,' " *Barbour*, 112 N.C. App. at 373, 436 S.E.2d at 173, entitled to challenge the sales and use tax exemption granted to eligible internet data centers. In our opinion, that question has already been answered in the negative by our decision in *Blinson*.

In *Blinson*, plaintiffs contended that "their status as taxpayers, suffering an increased tax burden as a result of the Dell incentives, [was] sufficient to provide [them] with standing" to challenge certain tax incentives and tax credits made available to major computer manufacturing facilities. *Blinson*, 186 N.C. App. at 334, 651 S.E.2d at 273. In concluding that the *Blinson* plaintiffs lacked standing to assert discrimination-based claims under "the Uniformity of Taxation Clauses of the North Carolina Constitution and Dormant Commerce Clause of the United States Constitution," this Court explained that:

> Plaintiffs' claims that the Computer Legislation violates the Uniformity of Taxation Clauses and the Federal Dormant Commerce Clause do not relate to any injury plaintiffs themselves have sustained. Rather, plaintiffs' claims under these provisions pertain only to a theoretical injury that might be suffered by other businesses that may attempt to compete with Dell. In other words, plaintiffs lack any " 'personal stake in the outcome of the controversy' " with respect to their challenges under these provisions. [*Goldston*, 361 N.C. at 30, 637 S.E.2d at 879] (quoting *Stanley*, 284 N.C. at 28, 199 S.E.2d at 650).
>
> . . . .
>
> Plaintiffs have not demonstrated that they belong to a class that is prejudiced by the operation of the Computer Legislation. Accordingly, we hold the trial court properly concluded that plaintiffs lack standing to bring their claims under both the Uniformity of Taxation Clauses and the Dormant Commerce Clause.

*Blinson*, 186 N.C. App. at 334-35, 651 S.E.2d at 274. As a result, this Court held that the fact that individuals seeking to challenge tax incentives provided to major computer manufacturers paid the taxes from which those computer manufacturers were exempt, without more, did not suffice to give them standing to advance a discrimination-based challenge to the constitutionality of those tax incentives.

The argument upon which Plaintiffs predicate their claim to have standing in this case does not differ materially from the argument utilized by the *Blinson* plaintiffs, which, as we have already noted, hinged solely upon the fact that they paid the taxes from which the affected computer manufacturers were exempt.[6] *Blinson*, 186 N.C. App. at 334, 651 S.E.2d at 273. In this case, Plaintiffs have made essentially the same argument, which is that they pay sales and use tax, that the same sort of exemption available to eligible internet data centers is not available to them, and that the existence of the sales and use tax exemption for eligible internet data centers forces them to bear more of the burden of financing the activities of state government than would be the case in the absence of the exemption. The fact that the class at issue here (that of all sales and use taxpayers) is indistinguishable on any principled basis from the class at issue in *Blinson* (that of all persons paying the taxes from which the large computer manufacturers were exempt) necessitates a conclusion that the Plaintiffs lacked standing to assert the discrimination-based claims set out in Claims for Relief 7, 8 and 11. Thus, the trial court correctly dismissed the challenges to the exemptions from the sales and use tax available to eligible internet data centers enacted as part of the 2006 Current Operations Appropriations Act set out in Claims for Relief 7, 8 and 11 of the amended complaint for lack of standing.[7]

### III.  Conclusion

As a result, we hold that the trial court correctly concluded that Plaintiffs lacked standing to assert the discrimination-based Claims

---

6. Plaintiffs describe the decision in *Bickett v. State Tax Commission*, 177 N.C. 433, 99 S.E. 415 (1919), as a case in which third parties were "permitted to prosecute claims for enforcement of a tax statute." In *Bickett*, the Governor instituted a *mandamus* proceeding to compel the enforcement of tax legislation which the State Tax Commission deemed unconstitutional. The Farmers Union was allowed to intervene because it was "largely interested in the enactment and enforcement of the statute." *Id.*, 177 N.C. at 434, 99 S.E. at 416. *Bickett* does little to elucidate the present case, since the Farmers Union was defending, not challenging, the constitutionality of the relevant tax legislation.

7. The *Blinson* opinion does not discuss the facts of *Barbour* in any detail. However, the facts at issue in the two cases are clearly different. In *Barbour*, a residential property owner was allowed to challenge a tax exemption granted to the owner of another tract of property used for residential purposes. In *Blinson*, however, a group of individuals who paid property, income, and sales and use taxes were not allowed to challenge tax exemptions provided to large computer manufacturers. As a result, the taxpayer who brought suit in *Barbour* was attempting to challenge a tax exemption associated with the type of property that he did, in fact, own, while the same could not be said of the taxpayers who brought suit in *Blinson*.

for Relief 7, 8, and 11 asserted in their amended complaint. For that reason, the trial court's order should be, and hereby is, affirmed.

AFFIRMED.

Chief Judge MARTIN and Judge JACKSON concur.