BRYANT, Judge.
Where plaintiffs' claims fail to demonstrate a particularized actual injury and are not based on a legally protected interest as required by North Carolina law, plaintiffs cannot establish standing, and the trial court did not err in granting defendant's motion to dismiss.
Plaintiffs James Arnold and Leah Metcalf attended the University of North Carolina at Chapel Hill ("defendant" or "UNC") on athletic scholarships and graduated in 2006 and 2009, respectively. They assert their education was faulty as a result of defendant enrolling student athletes into "hundreds of sham courses" and bring this action for damages and injunctive relief on behalf of themselves and a putative class of "all persons who attended UNC on athletic scholarships between 1993 and at least 2011."
According to the allegations of the second amended complaint, defendant entered into "scholarship agreements" with student athletes which promised a "UNC education" in exchange for their participation in athletics. Plaintiffs allege reliance on statements made during the recruitment process by coaches, academic counselors, and others that defendant would provide an "excellent combination of great academics and great [athletics]" and that "student-athletes would be cared for as part of the UNC Tar Heel Family...." The complaint also references, inter alia , defendant's charter and "Mission Statement," publicity materials, and the Student-Athlete Handbook, which plaintiffs contend guaranteed a certain caliber of education they expected to receive.
The crux of plaintiffs' complaint is their claim that they were funneled into "non-rigorous," "shadow curriculum" courses offered by the Department of African and Afro-American Studies (the "AAAS Department") from 1993 through 2011. Plaintiffs allege these courses were deficient because they involved "no class meetings, ... no supervision, no drafts of papers were reviewed, ... no faculty feedback was given[,] [and] [s]tudents had no communication whatsoever with the course's listed professor...."
Plaintiffs concede they were aware the AAAS courses were "less challenging than some other UNC courses," and acknowledge they took courses outside of the AAAS Department, but claim they "did not know and had no reasonable means of discovering" the alleged deficiencies of the "shadow curriculum" until an independent investigative report (the "Cadwalader Report"), commissioned by defendant, was publicly released in October 2014. Plaintiffs claim their participation in these courses "hamper[ed] their cognitive strength and limit [ed] their post-university career prospects." We summarize the facts alleged in the complaint specific to each named plaintiff below.
Plaintiff Leah Metcalf
Metcalf alleges she was a standout basketball player, recruited by many universities, but chose to attend UNC over other universities because of "the promise of a good education and a second family." Metcalf also hoped to become a physician. Once at UNC, Metcalf pursued a mathematics major and acknowledges that UNC staff "did not try to dissuade [her]" from this decision. Instead, Metcalf alleges she was encouraged to "balance out her schedule with less challenging ... AAAS courses." Metcalf took both mathematics and AAAS courses, completed a double major, and graduated in 2006. Upon graduation, Metcalf worked in a clerical position and as a camp counselor. She now plays basketball in Europe and has "abandoned her plans to be a physician."
Plaintiff James Arnold
Arnold alleges he was a strong student and all-state high school football player, recruited by various universities, but chose to attend UNC because he believed it would provide a better education and a chance to earn playing time on the football field. He also alleges he intended to pursue computer programing at UNC. At the beginning of his freshman year, he was "given a pre-assigned course schedule," featuring "shadow curriculum" courses in the AAAS Department. Arnold asserts he inquired about these courses, but ultimately accepted them on his academic counselor's advice.
Despite becoming "extremely disappointed" when he learned his desired computer science major would conflict with his football obligations, he opted to major in business management. However, his advisor told him that "[i]t would be better for you if we put you in African American [ (AAAS) ] studies." Arnold ultimately majored in African and African-American Studies through the AAAS Department and successfully graduated in 2009. Since graduating, Arnold alleges he has been "unable to get a job requiring a collegiate degree."
Defendant UNC filed a motion to dismiss plaintiffs' complaint, along with a memorandum of law in support of its motion. A hearing was held on 19 February 2016 in Mecklenburg County Superior Court, the Honorable Robert Ervin, Judge presiding. On 7 March 2016, Judge Ervin entered an order granting defendant's motion to dismiss. Plaintiffs filed notice of appeal.
_________________________
On appeal, plaintiffs contend the trial court erred in granting defendant's motion to dismiss pursuant to Rules 12(b)(1), (b)(2), and (b)(6). Specifically, plaintiffs contend (I) they have standing to obtain injunctive relief for their claims in this matter, (II) defendant waived sovereign immunity, and (III) the trial court erred in granting defendant's motion to dismiss for failure to state a claim. Because we conclude that the trial court properly granted defendant's motion to dismiss for lack of subject matter jurisdiction, we need not address plaintiffs' remaining issues on appeal.
I
Plaintiffs contend the trial court did not lack subject matter jurisdiction as plaintiffs have standing. We disagree.
This Court reviews dismissals for lack of subject matter jurisdiction based on lack of standing de novo . See Munger v. State , 202 N.C. App. 404, 410, 689 S.E.2d 230, 235 (2010). "Standing refers to whether a party has a sufficient stake in an otherwise justiciable controversy that he or she may properly seek adjudication of the matter." Lee Ray Bergman Real Estate Rentals v. N.C. Fair Housing Ctr. , 153 N.C. App. 176, 179, 568 S.E.2d 883, 886 (2002) (citation omitted). "If a party does not have standing to bring a claim, a court has no subject matter jurisdiction to hear the claim." Munger , 202 N.C. App. at 409-10, 689 S.E.2d at 235 (quoting Estate of Apple v. Commercial Courier Express, Inc. , 168 N.C. App. 175, 177, 607 S.E.2d 14, 16 (2005) ).
A plaintiff bears the burden to establish the following elements of standing: (1) an injury in fact "that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) ... fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Sullivan v. State , 170 N.C. App. 433, 434, 612 S.E.2d 397, 399 (2005) (quoting Estate of Apple , 168 N.C. App. at 177, 607 S.E.2d at 16 ).
"Standing most often turns on whether the party has alleged 'injury in fact' in light of the applicable statutes or caselaw." Neuse River Found., Inc., v. Smithfield Foods, Inc. , 155 N.C. App. 110, 114, 574 S.E.2d 48, 52 (2002) (citations omitted). A legally protected interest is an indispensable precondition to injury in fact, without which a plaintiff cannot establish standing. See, e.g., Beachcomber Props., L.L.C. v. Station One, Inc. , 169 N.C. App. 820, 824, 611 S.E.2d 191, 194 (2005) ("[P]laintiff has no legally protected interest, or 'injury in fact,' and therefore lacks standing...."). "[T]he injury in fact must be particularized and actual, not hypothetical or conjectural." Arendas ex rel. Arendas v. N.C. High Sch. Athletic Ass'n, Inc. , 217 N.C. App. 172, 175, 718 S.E.2d 198, 200 (2011) (citing Coker v. DaimlerChrysler Corp. , 172 N.C. App. 386, 391, 617 S.E.2d 306, 310 (2005) ).
In Arendas , two high school basketball players sued the North Carolina High School Athletic Association after their school's state championship win was vacated, and they were declared ineligible to participate in high school athletics for one year. Id. at 173, 718 S.E.2d at 199. The plaintiff-athletes claimed that the vacated win would cause them injury in the form of lost scholarships, lost job opportunities, and lost college prospects. Id. at 175-76, 718 S.E.2d at 200. This Court, however, determined that the plaintiff-athletes' alleged injuries resulting from the vacated championship win were hypothetical as "there [was] nothing ... actually demonstrating how the revocation of the Championship resulted in [injury]." Id. at 175, 718 S.E.2d at 200. As such, this Court held that as the plaintiff-athletes "did not suffer a particularized actual loss, they d[id] not have standing...." Id. at 176, 718 S.E.2d at 200.
In the instant case, plaintiffs' claimed "injury in fact" is that defendant's alleged scheme of funneling them into "academically unsound courses," namely, AAAS courses, "hamper[ed] their cognitive strength, de-valu[ed] their degrees, and limit[ed] their job opportunities." Plaintiffs contend that their injuries are concrete and identifiable; however, we believe these injuries are speculative at best.
As set forth in the second amended complaint, plaintiffs claim the following injuries:
59. Upon graduating in 2006, Ms. Metcalf worked in a clerical position in Charlotte, North Carolina at US Sports Management, Inc., and as a camp counselor for youth at the YMCA before deciding to play basketball in Europe, which she has been doing since. She has abandoned her plans to be a physician and is uncertain what she will do when she stops playing.
....
69. After graduating, Mr. Arnold was unable to get a job requiring a collegiate degree. He worked at a steel warehouse, briefly played Arena Football, and then worked at a Rent-A-Center location. He now works in Durham, North Carolina as a manager in training at H.H. Gregg, which does not require a college degree.
We believe the injuries alleged by plaintiffs as set forth above are too conjectural and uncertain to support standing. In other words, plaintiffs' complaint fails to demonstrate that they have "suffer[ed] a particularized actual loss" sufficient to confer standing. See id. at 176, 718 S.E.2d at 200. Indeed, although Metcalf alleges she "abandoned her plans to be a physician," she does not claim this personal decision relates to her enrollment in AAAS courses. Similarly, Arnold does claim that he has been "unable to get a job requiring a collegiate degree," however he does not describe either his efforts to obtain employment or instances of being denied employment as a result of having been steered into AAAS coursework while at UNC.
Further, although plaintiffs characterize their claims, alternatively, as breach of contract, breach of fiduciary duty, fraud, and unfair and deceptive trade practices, plaintiffs' arguments are essentially an attempt to reframe what are actually educational malpractice claims, which are not recognized under North Carolina law. See Supplee v. Miller-Motte Bus. Coll., Inc. , 239 N.C. App. 208, 219, 768 S.E.2d 582, 592 (2015) (disavowing educational malpractice claim and noting that North Carolina courts have repeatedly refused to inquire "into the nuances of educational processes and theories" (citation omitted)); Ryan v. Univ. of N.C. Hosps. , 128 N.C. App. 300, 302, 494 S.E.2d 789, 791 (1998) ("To state a claim for breach of contract, the plaintiff must do more than simply allege that the education was not good enough. Instead, he must point to an identifiable contractual promise that the University failed to honor." (citations omitted)); see also Thomas v. Olshausen , No. 3:07CV130-MU, 2008 WL 2468738, *2 (W.D.N.C. June 16, 2008) ("[T]here is no cognizable claim for educational malpractice under North Carolina law."). However, plaintiffs' reframing does not disguise the fact that plaintiffs are asking this Court to inquire into the substance of allegedly deficient courses and make a determination regarding their educational adequacy (or inadequacy). This we decline to do. See Supplee , 239 N.C. App. at 219, 768 S.E.2d at 592.
Accordingly, where plaintiffs' claims fail to demonstrate that they "suffered a particularized actual loss" and are not based on a "legally protected interest" as required by North Carolina law, see Beachcomber Props., L.L.C. , 169 N.C. App. at 824, 611 S.E.2d at 194, plaintiffs cannot establish standing, and the trial court did not err in granting defendant's motion to dismiss. Because we conclude the trial court properly dismissed plaintiffs' complaint for lack of subject matter jurisdiction based on standing, we need not address plaintiffs' remaining arguments on appeal.
AFFIRMED.
Report per Rule 30(e).
Judges HUNTER, JR., and INMAN concur.